RAILROAD COMMISSION OF TEXAS
Oil and Gas Division

**ORGANIZATION REPORT**

**FORM P-5**
Rev. 09/2011

**READ INSTRUCTIONS ON BACK**

| 1. Purpose of Filing | [ ] New Filing [X] Annual Refiling [ ] Change of Officers/Resident Agent [ ] Address Correction | **FILE BY:** 05/01/2017 **EXPIRES:** 05/31/2018 | 2. RRC Operator No. (if assigned) 293413 |

**3. ORGANIZATION**

Name of entity: (if the name of the organization has changed, see instructions on back)
GAMBILL ENERGY, LLC

Mailing Address

2007 N COLLINS BLVD STE 501
RICHARDSON      TX 75080

Street Address

SAME AS ORGANIZATION ADDRESS

Organization Phone Number:
(972) 509-9000

Emergency (after hours) Phone Number:
(806) 239-4787

| 4. Plan of Organization (select one) | [ ] A. Corporation [ ] F. Joint Venture | [ ] B. Limited Partnership [ ] G. Estate | [ ] C. Sole Proprietorship [X] H. Ltd Liability Co. (LLC) | [ ] D. Partnership [ ] I. Other (specify) | [ ] E. Trust |

**5. TEXAS RESIDENT AGENT**

Name of Texas Resident Agent:

Street Address

Mailing Address

A Texas Resident Agent is required for any foreign or nonresident organization pursuant to Statewide Rule 1(a)(4)(D).

**6. Attachments:**

P-5O - Officer Listings: Information for each controlling entity of the organization as required by Statewide Rule 1(a)(4)(C).

P-5A - Agent Listings: (Optional) - Designation of non-employee agents authorized to sign certain Forms P-4 and P-5 pursuant to Statewide Rule 1(a)(4)(E).

Filing Fee: Required for all "New Filing" and "Annual Refiling" submissions. See instructions on back.

Financial Assurance: If the operator is required to maintain financial assurance, the Organization Report will not be approved until it is in place.

**7. Reorganization:** [ ] Check here if this is reorganization of an existing registrant. If checked, provide the current name and RRC P-5 Number:

**8. Comments:** (optional)

Organization reports for operators of inactive wells: The Commission may not approve the P-5 Organization Report for an operator of one or more inactive wells unless the operator has complied with Commission rules and Texas statutes concerning the approval of plugging extensions for such inactive wells, including disconnection of electrical service and any required surface equipment removal.

Organization reports for operators with outstanding enforcement orders/judgments: The Commission may not approve the P-5 Organization Report for an operator if that operator is the subject of a final and unappealable order related to a violation of a Commission rule, order, license, permit, or certificate relating to safety or the prevention or control of pollution. Organization Reports for organizations with officers who are subject to such outstanding orders through their involvement with other organizations similarly may not be approved.

If the organization has used, or reported use of, a well for which the Certificate of Compliance has been canceled, the Commission may refuse to approve an Organization Report until the operator has paid any required reconnect fees and the Certificate of Compliance has been reissued for the well

An organization must file an amended Organization Report within 15 days after a change in any information required to be reported in the Organization Report.

**FOR RRC USE ONLY**

Approved By
Remarks

Signature

Title
( )

Filer's Name (Printed)

Filer's Telephone Number

Email Address (OPTIONAL - SEE INSTRUCTIONS FOR IMPORTANT INFORMATION)      Date

Certificate: I declare under penalties prescribed in Sec. 91.143, Texas Natural Resources Code, that I am authorized to make this report, that this report was prepared by me or under my supervision and direction, and that data and facts stated therein are true, correct, and complete, to the best of my knowledge.

P

# INSTRUCTIONS
## Organization Report (Form P-5)

**REFERENCES:** Oil & Gas Statewide Rules 1 (*Organization Report; Retention of Records; Notice Requirements*), 14 (*Plugging*), 15 (*Inactive Wells and Surface Equipment Requirements*), and 78 (*Fees, Performance Bonds and Alternate Forms of Financial Security Required To Be Filed*); and Pipeline Safety Statewide Rule 58 (*Organization Report*). The Railroad Commission s rules may be found on our website at http://www.rrc.state.tx.us/rules/rule.php.

**WHO MUST FILE FORM P-5:** Any entity performing operations within the jurisdiction of the Commission s Oil & Gas Division in accordance with Oil and Gas Statewide Rule 1; and each gas and/or liquids company and each m aster meter operator performing operations within the jurisdiction of the Commission s Safety Division in accordance with Pipeline Safety Statewide Rule 58. (Master meter operators filing solely as required by the Safety Division, see  Special Instructions For Master Metered System Operators  section below.)

**WHEN TO FILE FORM P-5:**
- **INITIAL FILING**  Your initial Organization Report must be filed prior to beginning operations within the Commission s jurisdiction.
- **RENEWAL FILINGS**  Your Organization Report must be refiled annually. The Commission will notify you before your renewal date by mailing you computer-generated Organization Report forms pre-printed with the information currently shown on your Organization Report record. Review the information carefully, update as needed, and then sign and submit the Organization Report renewal to the Commission.
- **CHANGES** - If any information provided on your organization report changes, you must submit a revised organization report within fifteen (15) days of the change, except as noted below:
  - ADDRESS CHANGES - If the only change is to the organization s address or telephone number, then you may update that information by sending a signed letter to the P-5 Financial Assurance Unit. No other information may be updated by letter
  - ORGANIZATION NAME CHANGE  If the name of the organization has changed (due to reorganization or change in the form of business), you must file a new Organization Report in the new name and obtain a new operator number. A new filing submitted for this purpose should reference the prior name by entering that information in Item No. 7.

**SPECIFIC ITEMS ON FORM P-5:**
- **No. 1:** Check the proper block to show the purpose of filing. More than one block may be checked.
- **No. 2:** Your permanent RRC operator number is assigned after the initial filing of your P-5. Your operator number will be required on most reports and forms you file with the Commission.
- **No. 3:** Name of Entity :  For new filings, enter the full name of your organization. If you are required to register with the Texas Secretary of State, your name shown in Box 3 on the Organization Report should exactly match your name as shown on your Secretary of State registration, including punctuation. (Due to space limitations, the Commission may abbreviate your name for entry into Commission systems.)
- **No. 4:** Check the appropriate plan of organization on all filings. Select only one plan of organization.
- **No. 5:** If you are a foreign or non-resident organization (i.e., your organization is located outside of the State of Texas as indicated by the street address in No. 3), you must designate and maintain a Texas resident agent within the state. A Texas Resident Agent with an address different from that of the organization may also be designated as an alternative to providing separate addresses for the officers on Form P-5O (Organization Report Officer Listing).
- **No. 6:** If you have reorganized and changed your organization name, check the box and provide the previous name and operator number.

**SPECIAL INSTRUCTIONS FOR MASTER METERED SYSTEM OPERATORS:** If the operation of one or more master metered systems is the only activity for which the Organization Report is being filed, then you should note that in Item No. 8 (Remarks), and observe the following requirements:
- The required filing fee for New Filings and Annual Renewals is $225.00.
- No financial assurance is required for master meter operators.
- The Organization Report must be filed in the name of the legal entity operating the master meter.
- The system manager(s) must be identified among the officers on Form P-5O.
- A listing of all systems for which the filing entity is responsible must be attached to the Organization Report filing.

**FILING FEE:**  Except as noted above, the filing fee for a New Filing (the initial Organization Report filed by an entity) is $300.00. The filing fee for an Annual Renewal of an entity s Organization Report will be based on the activities in which the organization is engaged, and may be up to $1,350.00. See Rule 78. (There is no filing fee for an Organization Report filed solely to update officers, agents and/or addresses.)

**FINANCIAL ASSURANCE:** Most Commission regulated activities, including the operation of wells and pipelines, will require the operator to file and maintain some form of financial assurance (such as a bond, letter of credit, or cash deposit) in varying amounts. If the filing operator is required to maintain financial assurance, any renewal documentation for the financial assurance must be on file for the period covered by the P-5 Organization Report (plus any additional period following expiration of the Organization Report that may be required by your financial assurance documents) before the Organization Report renewal can be approved and processed.

**EMAIL ADDRESS:** YOU ARE NOT REQUIRED TO PROVIDE AN EMAIL ADDRESS when completing and filing this form. Please be aware that information provided to any governmental body may be subject to disclosure pursuant to the Texas Public Information Act or other applicable federal or state legislation. IF YOU PROVIDE AN EMAIL ADDRESS, YOU AFFIRMATIVELY CONSENT TO THE RELEASE OF THAT EMAIL ADDRESS TO THIRD PARTIES. Other departments within the Railroad Commission also may use the email address you provide to communicate with you.

Mail to: Railroad Commission of Texas
        P-5 Financial Assurance Unit
        P O Box 12967
        Austin, Texas 78711-2967

**RAILROAD COMMISSION OF TEXAS**
Oil and Gas Division

**FORM P-5O**
Rev. 09/2011

# ORGANIZATION REPORT
# OFFICER LISTING

P-50

(File as attachment to FORM P-5 Organization Report)

Page 1 of 1

| 1. Current operator name exactly as shown on P-5 Organization Report | PURSUANT TO Oil & Gas Statewide Rule 1(a)(4)(C), information must be provided "for each officer, director, general partner, owner of more than 25% ownership interest, or trustee (hereinafter controllong entity) of the organization." |
|---|---|
| GAMBILL ENERGY, LLC | |
| 2. RRC Operator No. (if assigned)  293413 | |

**Instructions:**

Attach as many sheets as are needed to identify all required officers.

**Full legal Name:** The entity's or individual's full legal name. Please do not use initials.

**ID Number:** If the filing organization is a Sole Propriatorship (i.e., an individual), you must provide the owner's social security number. Otherwise, you may provide (at your choice) the officer's social security number, driver's license number, or Texas State Identification number. (Note: The Railroad Commission considers such ID numbers to be confidential information.)

**Addresses:** You must provide an address for each officer that is different from the address for the organization UNLESS: 1) you have shown a Texas Resident Agent on your Organization Report, and that agent has an address different from that of the organization; or 2) the organization is being operated out of the officer's home.

If an entity is identified as an officer on this form, you must also identify each officer of that entity.

---

**Full Legal Name:** NORVELL, JAMES DAVID JR.

**Title:** MANAGING MEMBER

**Street Address** ☐ Check here if operating out of this officer's home.

4513 VALLEY GLEN DR
CARROLLTON    TX 75010

**Mailing Address (if different from Street Address)**

SAME AS ORG. MAILING ADDRESS

☒ Driver's Lic. ☐ State ID ☐ Social Security No.  State (if not SSN): TX   Number: TX DL ON FILE

---

**Full Legal Name:**

**Title:**

**Street Address** ☐ Check here if operating out of this officer's home.

**Mailing Address (if different from Street Address)**

☐ Driver's Lic. ☐ State ID ☐ Social Security No.  State (if not SSN):   Number:

---

**Full Legal Name:**

**Title:**

**Street Address** ☐ Check here if operating out of this officer's home.

**Mailing Address (if different from Street Address)**

☐ Driver's Lic. ☐ State ID ☐ Social Security No.  State (if not SSN):   Number:

---

**Full Legal Name:**

**Title:**

**Street Address** ☐ Check here if operating out of this officer's home.

**Mailing Address (if different from Street Address)**

☐ Driver's Lic. ☐ State ID ☐ Social Security No.  State (if not SSN):   Number:

P-5 ORGANIZATION REPORT FACT SHEET
FINANCIAL ASSURANCE OPTIONS AND FILING FEE


GAMBILL ENERGY, LLC                              ORGANIZATION NO. 293413
2007 N COLLINS BLVD STE 501
RICHARDSON    TX 75080

PRINTING DATE:   MARCH  4, 2017   P-5 RENEWAL DATE:   JUNE  1, 2017

TOTAL NUMBER OF WELLS (ACTIVE, INACTIVE, ETC.):              39 WELLBORES

TOTAL AGGREGATE FEET OF WELL DEPTH FOR ALL WELLS:       60,624 FEET

INACTIVE WELLS (DEFINED UNDER RULE 15 - SEE ENCLOSED LIST)   39 WELLBORES

TOTAL "COST CALCULATION" FOR PLUGGING ALL INACTIVE WELLS     $174,598
   (IF NEEDED - SEE FORM W-3X AND INACTIVE WELL LISTING FOR FURTHER INFO.)

P-5 FILING FEE - $  500.00 (SEE STATEWIDE RULE 78 FOR INFORMATION REGARDING
SURCHARGE     - $  750.00  THE CALCULATION OF THIS FEE AND SURCHARGE.)
TOTAL DUE     - $1,250.00

FINANCIAL ASSURANCE:  (SELECT ONE OPTION ONLY)

OPTION          DESCRIPTION                         REQUIRED LEVEL

1.  INDIVIDUAL PERFORMANCE BOND, LETTER          $      121,248.00
    OF CREDIT, OR CASH DEPOSIT
    ------------------------------------------------------------------------
2.  BLANKET PERFORMANCE BOND, LETTER             $       50,000.00
    OF CREDIT, OR CASH DEPOSIT

FINANCIAL ASSURANCE NOTES:

  1) IF YOUR ONLY ACTIVITY ACCORDING TO COMMISSION RECORDS IS AS A FIRST
     PURCHASER, SURVEY COMPANY, SALT WATER HAULER, GAS NOMINATOR, GAS
     PURCHASER OR WELL PLUGGER, THEN FINANCIAL ASSURANCE IS NOT REQUIRED.
     A REQUIRED AMOUNT ABOVE INDICATES THAT YOU CURRENTLY HAVE ACTIVITIES
     THAT REQUIRE THE FILING OF FINANCIAL ASSURANCE.

  2) OPTION 1 ABOVE IS AVAILABLE ONLY TO OPERATORS WITH NO ACTIVITIES THAT
     REQUIRE THE FILING OF FINANCIAL ASSURANCE OTHER THAN THE OPERATION OF
     WELLS.  IF YOU HAVE NON-WELL ACTIVITIES THAT REQUIRE FINANCIAL
     ASSURANCE TO BE FILED, THEN OPTION 1 IS NOT AVAILABLE TO YOU.

INSTRUCTIONS:
  1) IF YOU ACQUIRE ADDITIONAL WELLS BETWEEN THE DATE OF PRINTING AND YOUR
     P-5 RENEWAL FILING, ADDITIONAL FINANCIAL ASSURANCE MAY BE REQUIRED.

  2) MAKE CHECKS PAYABLE TO THE RAILROAD COMMISSION OF TEXAS.  CASH DEPOSITS
     FILED AS FINANCIAL ASSURANCE MUST BE IN THE FORM OF A CASHIER'S OR
     CERTIFIED CHECK.

The Railroad Commission understands that the operator referenced above may be a debtor in a pending bankruptcy proceeding. The portion of this notice, if any, that represents pre-petition fees due is sent for informational purposes, only, and is not an attempt to collect a debt. The Railroad Commission may file an appropriate proof of claim with the bankruptcy court for such pre-petition fees. Any post-petition fees due and owing as shown on this notice should be paid in accordance with this notice.

The operator referenced above may be a debtor in a bankruptcy proceeding. However, such operators are still required to comply with Texas state law and rules of the Railroad Commission regarding financial assurance. 28 U.S.C. 959(b). All operators, whether or not debtors in bankruptcy, are required to satisfy the requirements of Texas Natural Resources Code §91.103 regarding financial assurance. *See* Safety-Kleen, Inc. v. Wyche, 274 F.3d 846 (4th Cir. 2001); United States v. Power Eng'g Co., 191 F.3d 1224 (10th Cir. 1999); United States v. Ekco Housewares, Inc., 853 F. Supp. 975 (N.D. Ohio 1994), rev'd in part, on other grounds, 62 F.3d 806 (6th Cir. 1995); EPA v. Envtl. Waste Control, Inc., 917 F.2d 327 (7th Cir. 1990).

(ORN014)
RAILROAD COMMISSION OF TEXAS
LIST OF INACTIVE WELLS BY OPERATOR
ORGANIZATION REPORT (P5) RENEWAL DUE BY    JUNE  1  2017

--------------------------------------------------------------------------

OPERATOR > GAMBILL ENERGY, LLC              # 293413

--------------------------------------------------------------------------

| API NUMBER   LOCATION   COST CALC   SHUT-IN DATE   FORM W3C   INACTIVITY AS OF |
| O/G DIST LEASE  WELL NO.         LEASE NAME        REQUIRED   P5 RENEWAL DATE |

--------------------------------------------------------------------------

| API NUMBER | LOCATION | COST CALC | SHUT-IN DATE | LEASE NAME | FORM W3C REQUIRED | INACTIVITY AS OF P5 RENEWAL DATE |
|---|---|---|---|---|---|---|
| 485  05378 | LAND | $ 3,070 | 12/2007 | | | 9YRS 06MOS * |
| OIL  09 05453 | 12 | | | SMITH, JODIE D. | | |
| 485  11108 | LAND | $ 4,798 | 01/1998 | | | 19YRS 05MOS ** |
| OIL  09 05453 | 9 | | | SMITH, JODIE D. | | |
| 485  31039 | LAND | $ 1,253 | 09/2010 | | | 6YRS 09MOS * |
| OIL  09 04997 | 4 | | | STRINGER, SUE | | |
| 485  31720 | LAND | $ 3,096 | 09/2015 | | Y | 1YRS 09MOS |
| OIL  09 05154 | 14 | | | CROW, W. E. | | |
| 485  32094 | LAND | $ 3,030 | 09/2010 | | | 6YRS 09MOS * |
| OIL  09 05154 | 15 | | | CROW, W. E. | | |
| 485  33034 | LAND | $ 2,506 | 09/2010 | | | 6YRS 09MOS * |
| OIL  09 04997 | 9 | | | STRINGER, SUE | | |
| 485  33035 | LAND | $ 1,094 | 03/2014 | | | 3YRS 03MOS |
| OIL  09 04997 | 8 | | | STRINGER, SUE | | |
| 485  36138 | LAND | $ 5,645 | 09/2010 | | | 6YRS 09MOS * |
| OIL  09 04997 | 10 | | | STRINGER, SUE | | |
| 485  36620 | LAND | $ 3,177 | 03/2012 | | Y | 5YRS 03MOS * |
| OIL  09 05154 | 18 | | | CROW, W. E. | | |
| 485  36621 | LAND | $ 3,208 | 08/2007 | | | 9YRS 10MOS * |
| OIL  09 05154 | 17 | | | CROW, W. E. | | |
| 485  36811 | LAND | $ 3,079 | 12/2010 | | | 6YRS 06MOS * |
| OIL  09 05154 | 19 | | | CROW, W. E. | | |
| 485  37642 | LAND | $ 6,264 | 12/2007 | | | 9YRS 06MOS * |
| OIL  09 05453 | 16 | | | SMITH, JODIE D. | | |
| 485  38201 | LAND | $ 2,618 | 09/2010 | | | 6YRS 09MOS * |
| OIL  09 04997 | 12 | | | STRINGER, SUE | | |
| 485  39732 | LAND | $ 3,240 | 12/2007 | | | 9YRS 06MOS * |
| OIL  09 05453 | 18 | | | SMITH, JODIE D. | | |

     *  SHUT-IN FOR MORE THAN 5 YEARS
    **  SHUT-IN FOR MORE THAN 10 YEARS

RAILROAD COMMISSION OF TEXAS
LIST OF INACTIVE WELLS BY OPERATOR
ORGANIZATION REPORT (P5) RENEWAL DUE BY    JUNE  1  2017

-----------------------------------------------------------------------------

OPERATOR > GAMBILL ENERGY, LLC              # 293413

-----------------------------------------------------------------------------

| API NUMBER | LOCATION | COST CALC | SHUT-IN DATE | FORM W3C | INACTIVITY AS OF |
| O/G DIST LEASE WELL NO. | | | LEASE NAME | REQUIRED | P5 RENEWAL DATE |

-----------------------------------------------------------------------------

| 485  45781  LAND | | $  5,760 | 01/2015 | Y | 2YRS 05MOS |
| OIL  09 33219     3B | | | SUE STRINGER 'B' | | |
| 485  80521  LAND | | $  5,760 | 12/2007 | | 9YRS 06MOS * |
| OIL  09 04996     1 | | | SMITH, J. D. | | |
| 485  80522  LAND | | $  5,760 | 12/2007 | | 9YRS 06MOS * |
| OIL  09 04996     2 | | | SMITH, J. D. | | |
| 485  80523  LAND | | $  1,236 | 06/2012 | Y | 5YRS 00MOS * |
| OIL  09 04996     3 | | | SMITH, J. D. | | |
| 485  80524  LAND | | $  1,224 | 06/2012 | Y | 5YRS 00MOS * |
| OIL  09 04996     4 | | | SMITH, J. D. | | |
| 485  80525  LAND | | $  5,760 | 09/2010 | | 6YRS 09MOS * |
| OIL  09 04997     1 | | | STRINGER, SUE | | |
| 485  80527  LAND | | $  5,760 | 03/2014 | | 3YRS 03MOS |
| OIL  09 04997     2 | | | STRINGER, SUE | | |
| 485  80528  LAND | | $  5,760 | 09/2010 | | 6YRS 09MOS * |
| OIL  09 04997     3 | | | STRINGER, SUE | | |
| 485  80529  LAND | | $  5,760 | 09/2010 | | 6YRS 09MOS * |
| OIL  09 04997     5A | | | STRINGER, SUE | | |
| 485  80530  LAND | | $  5,760 | 03/2012 | Y | 5YRS 03MOS * |
| OIL  09 04997     6A | | | STRINGER, SUE | | |
| 485  81859  LAND | | $  5,760 | 08/2007 | | 9YRS 10MOS * |
| OIL  09 05154     1 | | | CROW, W. E. | | |
| 485  81861  LAND | | $  5,760 | 06/2006 | Y | 11YRS 00MOS ** |
| OIL  09 05154     4 | | | CROW, W. E. | | |
| 485  81862  LAND | | $  4,838 | 09/2015 | Y | 1YRS 09MOS |
| OIL  09 05154     10 | | | CROW, W. E. | | |
| 485  81863  LAND | | $  4,789 | 09/2015 | Y | 1YRS 09MOS |
| OIL  09 05154     11R | | | CROW, W. E. | | |

   * SHUT-IN FOR MORE THAN 5 YEARS
  ** SHUT-IN FOR MORE THAN 10 YEARS

(ORN014)                 RAILROAD COMMISSION OF TEXAS                    PAGE    3
                      LIST OF INACTIVE WELLS BY OPERATOR
                ORGANIZATION REPORT (P5) RENEWAL DUE BY    JUNE  1  2017

--------------------------------------------------------------------------------

OPERATOR > GAMBILL ENERGY, LLC                # 293413

--------------------------------------------------------------------------------

| API NUMBER | LOCATION | COST CALC | SHUT-IN DATE | FORM W3C | INACTIVITY AS OF |
| O/G DIST LEASE WELL NO. | | | LEASE NAME | REQUIRED | P5 RENEWAL DATE |

--------------------------------------------------------------------------------

| 485  81864   LAND | | $  5,760 | 08/2007 | | 9YRS 10MOS * |
| OIL  09 05154    12 | | | CROW, W. E. | | |
| 485  81865   LAND | | $  5,760 | 08/2007 | | 9YRS 10MOS * |
| OIL  09 05154    16 | | | CROW, W. E. | | |
| 485  84137   LAND | | $  5,760 | 12/2007 | | 9YRS 06MOS * |
| OIL  09 05453    1 | | | SMITH, JODIE D. | | |
| 485  84139   LAND | | $  5,760 | 01/1998 | | 19YRS 05MOS ** |
| OIL  09 05453    3 | | | SMITH, JODIE D. | | |
| 485  84140   LAND | | $  5,760 | 12/2007 | | 9YRS 06MOS * |
| OIL  09 05453    4 | | | SMITH, JODIE D. | | |
| 485  84141   LAND | | $  5,760 | 01/1998 | | 19YRS 05MOS ** |
| OIL  09 05453    5 | | | SMITH, JODIE D. | | |
| 485  84144   LAND | | $  5,760 | 12/2001 | | 15YRS 06MOS ** |
| OIL  09 05453    8 | | | SMITH, JODIE D. | | |
| 485  87618   LAND | | $  1,233 | 06/2006 | Y | 11YRS 00MOS ** |
| OIL  09 09341    2 | | | RED RIVER OIL COMPANY, ETAL | | |
| 485  87619   LAND | | $  5,760 | 02/2007 | Y | 10YRS 04MOS ** |
| OIL  09 09341    4 | | | RED RIVER OIL COMPANY, ETAL | | |
| 485  87620   LAND | | $  5,760 | 02/2007 | Y | 10YRS 04MOS ** |
| OIL  09 09341    5 | | | RED RIVER OIL COMPANY, ETAL | | |
| 485  87621   LAND | | $  5,760 | 02/2007 | Y | 10YRS 04MOS ** |
| OIL  09 09341    6 | | | RED RIVER OIL COMPANY, ETAL | | |

     *  SHUT-IN FOR MORE THAN 5 YEARS
    ** SHUT-IN FOR MORE THAN 10 YEARS

## FORMS PACKET

Attached are Railroad Commission forms that you **may** need to complete your P-5 renewal process. This packet contains the following:

1) **Organization Report Officer Listing (Form P-5O)**
Preprinted P-5O forms were included in your renewal packet listing the information currently on file. To update that information, you should mark through erroneous information and provide the correct information. Should you need additional blank P-5O forms, make as many copies as necessary.

2) **Organization Report Non-Employee Agent Listing (Form P-5A)**
Statewide Rule 1 requires that P-5s and operator change P-4s may only be executed by an employee of the company or by previously designated non-employee agents. Form P-5A allows you to designate any such non-employee agents that you wish to have that authority. **You are not required to designate any such agents unless you wish to do so.** If you have previously designated such non-employee agents, then preprinted P-5A forms have been included in your renewal packet listing the information currently on file.

3) **Individual Performance Bond [Form P-5PB(1)]**
If you are filing a <u>Bond</u> under Option 1 for your financial assurance, you and your surety will need to provide a duly executed Individual Performance Bond on this form. (If you are renewing an existing bond, simply have your surety issue a continuation certificate and provide the original to the Commission.)

4) **Blanket Performance Bond [Form P-5PB(2)]**
If you are filing a <u>Bond</u> under Option 2 for your financial assurance, you and your surety will need to provide a duly executed Blanket Performance Bond on this form. (If you are renewing an existing bond, simply have your surety issue a continuation certificate and provide the original to the Commission.)

5) **Irrevocable Documentary Blanket Letter of Credit [Form P-5LC]**
If you are filing a <u>Letter of Credit</u> under either Option 1 or Option 2 for your financial assurance, your bank will need to provide a duly executed Letter of Credit on this form. (If you are renewing an existing bond, your bank may issue an amendment on their letterhead changing the expiration date on existing letter of credit rather than issue a new one.)

6) **Instructions for Individual & Blanket Performance Bonds, Letters of Credit or Cash Deposits**
This instruction sheet summarizes information regarding the Commission's requirements for Bonds, Letters of Credit or Cash Deposits filed as financial assurance in connection with the operator's Organization Report.

7) **Certification of Surface Equipment Removal for an Inactive Well (Form W-3C)**
If you have inactive wells that must be brought into compliance with the surface equipment removal requirements of Statewide Rule 15, you will need this form to certify to the Commission that you have complied.

8) **Application for an Extension of Deadline for Plugging an Inactive Well (Form W-3X)**
If you have wells that have been inactive 12 months or longer, you will need to request a plugging extension for those wells by filing Form W-3X.

RAILROAD COMMISSION OF TEXAS
Oil and Gas Division

# ORGANIZATION REPORT
# OFFICER LISTING

FORM P-5O
(Rev. 09/2011)

(File as attachment to Form P-5 Organization Report)

Page _____ of _____

| 1. Current operator name exactly as shown on P-5 Organization Report | PURSUANT TO Oil & Gas Statewide Rule 1(a)(4)(C), information must be provided "for each officer, director, general partner, owner of more than 25% ownership interest, or trustee (hereinafter controlling entity) of the organization." |
|---|---|
| 2. RRC Operator No. (if assigned) | |

Instructions:

Attach as many sheets as are needed to identify all required officers.

Full Legal Name: The entity's or individual's full legal name. Please do not use initials.

ID Number: If the filing organization is a Sole Proprietorship (i.e., an individual), you must provide the owner's social security number. Otherwise, you may provide (at your choice) the officer's social security number, driver's license number, or Texas State Identification number. (Note: The Railroad Commission considers such ID numbers to be confidential information.)

Addresses: You must provide an address for each officer that is different from the address for the organization UNLESS: 1) you have shown a Texas Resident Agent on your Organization Report, and that agent has an address different from that of the organization; or 2) the organization is being operated out of the officer's home.

If an entity is identified as an officer on this form, you must also identify each officer of that entity.

**3. OFFICERS**

Full Legal Name: | Title:

Street Address: ☐ Check here if operating out of this officer's home. | Mailing Address (if different from Street Address)

☐ Driver's Lic. ☐ State ID ☐ Social Security No. State (if not SSN): | Number:

---

Full Legal Name: | Title:

Street Address: ☐ Check here if operating out of this officer's home. | Mailing Address (if different from Street Address)

☐ Driver's Lic. ☐ State ID ☐ Social Security No. State (if not SSN): | Number:

---

Full Legal Name: | Title:

Street Address: ☐ Check here if operating out of this officer's home. | Mailing Address (if different from Street Address)

☐ Driver's Lic. ☐ State ID ☐ Social Security No. State (if not SSN): | Number:

---

Full Legal Name: | Title:

Street Address: ☐ Check here if operating out of this officer's home. | Mailing Address (if different from Street Address)

☐ Driver's Lic. ☐ State ID ☐ Social Security No. State (if not SSN): | Number:



RAILROAD COMMISSION OF TEXAS
Oil and Gas Division

# ORGANIZATION REPORT
# NON-EMPLOYEE AGENT LISTING

**FORM P-5A**

(Rev. 09/2011)

| | |
|---|---|
| 1. Current operator name exactly as shown on P-5 Organization Report | **PURSUANT TO** Oil & Gas Statewide Rule 1(a)(4)(E), the organization must provide the name of any non-employee agent that the organization authorizes to act for the organization in signing Oil and Gas Division certificates of compliance which initially designate the operator or change the designation of the operator. Organizations may designate non-employee agents to execute subsequent organization reports. **That designation shall be authorized by the organization and not by a non-employee agent.** |
| 2. RRC Operator No. (if assigned) | |

**Instructions:**

DO NOT USE THIS FORM TO DESIGNATE A TEXAS RESIDENT AGENT. (Your Texas Resident Agent is identified on Form P-5 to which this is attached.) This Form P-5A must ONLY be used if you have designated a non-employee agent with authority to sign operator-change Forms P-4 and/or P-5 renewals. If you have not designated any non-employee agents for that purpose, then you should not file Form P-5A.

THIS FORM MAY BE FILED AT ANY TIME. If a change in an organization's representation has occurred, a revised Non-Employee Agent Listing may be filed at any time to update the commission's records.

IF ANY NON-EMPLOYEE AGENTS LISTED ON THIS FORM ARE NOT CURRENTLY DESIGNATED ON YOUR ORGANIZATION REPORT RECORD, THEN THIS FORM P-5A MUST BE SIGNED BY A DULY AUTHORIZED COMPANY OFFICER OR EMPLOYEE. (If no changes have been made to the information on this form and it is being filed in connection with the annual renewal of the organization's P-5, then a previously designated non-employee agent listed below may sign it.)

EMAIL ADDRESS: YOU ARE NOT REQUIRED TO PROVIDE AN EMAIL ADDRESS when completing and filing this form. Please be aware that information provided to any governmental body may be subject to disclosure pursuant to the Texas Public Information Act or other applicable federal or state legislation. IF YOU PROVIDE AN EMAIL ADDRESS, YOU AFFIRMATIVELY CONSENT TO THE RELEASE OF THAT EMAIL ADDRESS TO THIRD PARTIES. Other departments within the Railroad Commission also may use the email address you provide to communicate with you.

**3. DESIGNATED NON-EMPLOYEE AGENTS (authorized to file operator-change Forms P-4 and renewal Forms P-5).**

Agent's Name:

Street Address:                                    Mailing Address (if different from Street Address)

Agent's Name:

Street Address:                                    Mailing Address (if different from Street Address)

Agent's Name:

Street Address:                                    Mailing Address (if different from Street Address)

Agent's Name:

Street Address:                                    Mailing Address (if different from Street Address)

| | FOR RRC USE ONLY |
|---|---|
| Signature | Approved by |
| Title | |
| (    ) | Remarks |
| Filer's Name (Printed)     Filer's Telephone Number | |

Email Address (OPTIONAL - SEE INSTRUCTIONS FOR IMPORTANT INFORMATION)     Date

**Certificate:** I declare under penalties prescribed in Sec. 91.143, Texas Natural Resources Code, that I am authorized to make this report, that this report was prepared by me or under my supervision and direction, and that data and facts stated therein are true, correct, and complete, to the best of my knowledge.

TO: RAILROAD COMMISSION OF TEXAS
    Attention: Oil & Gas Division
    Permitting/Production, P-5 Financial Assurance Section
    P.O. Box 12967
    Austin, TX 78711-2967

Bond # _____

**INDIVIDUAL PERFORMANCE BOND**

**P-5PB(1)**
rev. 6/2002

THE STATE OF TEXAS, COUNTY OF _____

    WHEREAS, persons performing oil and gas operations within the jurisdiction of the Railroad Commission of Texas are required to execute and file with the Commission a bond covering those operations, pursuant to §91.103 and §91.104 of the Texas Natural Resources Code;

    WHEREAS, the Principal as an operator of one or more wells, is also required to file an annual P-5 Organization Report (P-5) in order to operate wells and perform associated oil and gas activities;

    WHEREAS, the Principal named below is the operator of wells listed on the Commission's Oil and Gas Proration Schedules, and any additional wells that may be obtained prior to the expiration of this bond and carried on the Oil and Gas Proration Schedules;

    WHEREAS, the Principal's P-5 Organization Report and the Oil and Gas Proration Schedules pertaining to the Principal are incorporated herein by reference as if fully set forth at length;

    WHEREAS, the Principal desires to perform oil and gas operations and activities within the jurisdiction of the Commission, and which operations and activities must be carried on in full conformance with all state laws and Commission rules, including those laws and Commission rules, orders, and permits requiring operators to plug and abandon all wells and control, abate, and clean up pollution associated with an operator's oil and gas operations and activities;

    WHEREAS, Principal acknowledges and agrees that, due to amendments to the Texas Natural Resources Code, amendments to Commission Rules, and/or changes to the Principal's Commission-regulated operations, including without limitation the acquisition of additional wells, it may be required during the effective term of this bond to provide additional financial security beyond the face amount of this bond before its P-5 Organization Report will be accepted and approved.

| 1. Organization Name, exactly as shown on Form P-5 Organization Report. | | 2. P-5 Number, if assigned. |
|---|---|---|
| 3. Total # of operator's wells: | 4. Total aggregate depth of wells: | 5. Effective Date of P-5 Renewal for which Bond is being submitted (Leave blank if this is the initial bond filing): |

    We, _____ (person's name) as Principal, and
_____ as Surety, duly authorized and qualified to do business in the State of Texas, are held and firmly bound unto the State of Texas in the sum of _____ Dollars ($_____) payable at Austin, Travis County, Texas, and for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

    This bond is conditioned that if the Principal will plug and abandon all wells and control, abate, and clean up pollution associated with its oil and gas operations and activities in accordance with state law and all permits, rules and orders of the Commission and is in full compliance with the following requirements, then the Principal and Surety are relieved of their obligation to pay the bond amount to the State:

1.     Inactive wells shall be maintained in compliance with Commission Statewide Rule 14 (a) by plugging the wells, (b) by restoring the wells to beneficial use, or (c) so as to prevent the pollution of any ground or surface water in the state or any uncontrolled escape of formation fluids from the strata in which they were originally located.

2.     All active wells shall be maintained so as to prevent the pollution of any ground or surface water in the state or any uncontrolled escape of formation fluids from the strata in which they were originally located.

3.     All oil and gas operations and activities shall be carried out so as to prevent pollution of any ground or surface water in the state.

    In the event of a failure of Principal to comply with the conditions and obligations of this bond, the Surety shall promptly remedy such non-compliance, in accordance with the laws of the state and permits, rules, and orders of the Commission, within 60 days of notice of non-compliance.

1.     If any well or other oil and gas operation or activity subject to this bond is likely to pollute or is polluting any ground or surface water or allowing uncontrolled escape of formation fluids from the strata in which they were originally located, the Surety shall expend funds up to the face amount of the bond to control, abate and clean up pollution and to prevent further escape of formation fluids.

2.     If any well or other oil and gas operation or activity subject to this bond is not polluting any ground or surface water or allowing uncontrolled escape of formation fluids from the strata in which they were originally located, but the Principal has failed to maintain current operator status as reflected in the Commission's P-5 Organization Report records, the Surety shall:

    (a)     Expend funds up to the face amount of the bond to properly plug the well or close any other abandoned operation or activity (Surety understands and agrees that plugging or closing operations must be completed once commenced without the expenditure of State Funds, including State Oil-field Cleanup Funds); or

    (b)     Pay liquidated damages. It is agreed by the parties that the actual damages which might be sustained by the Railroad Commission of Texas by reason of the failure to comply are uncertain and would be difficult of ascertainment, and it is further agreed that the sum of $2.50 per foot multiplied by the total depth of each non-compliant well, up to the face amount of the bond, would be reasonable and just compensation for such failure to comply, and Surety hereby promises to pay and the Railroad Commission of Texas agrees to accept, at its office in Austin, Travis County, Texas such sum as liquidated damages, and not as a penalty, in the event of such failure to comply.

(over)

3. Except as provided by Paragraph 2(b) above, if the Commission has expended State Funds to plug any well, to close any other operation or activity, to control, abate and clean up pollution or take any other action to prevent further escape of formation fluids, the Surety shall reimburse the Commission for the amounts of State Funds so expended up to the face amount of the bond.

Sums demanded under this bond shall be paid to the Railroad Commission at Austin, Texas, within thirty days after receipt of written demand therefor, which demand shall be mailed by registered or certified U.S. mail to the address shown below.

Conditions and obligations under this bond are construed in accordance with state law and all permits, rules, and orders of the Commission, including any amendments thereto that may be made during the term of this bond, and Surety waives notice of any amendments. The State of Texas shall have the right to sue on and otherwise enforce the obligations of this bond without first resorting to or exhausting its remedies against the properties and assets of the Principal.

This bond is effective beginning 150 days after the Principal's P-5 effective date stated in Box 5. If the Principal is filing this bond for the first time, then the bond is effective on the Principal's P-5 effective date for the first year; thereafter, it will be effective 150 days after the P-5 effective date.

The term of this bond shall expire _____, 20_____ (date must be 150 days after one of the Principal's annual P-5 expiration dates) and is renewable. Written notice of renewal shall be given by the Surety to the Commission on or before the Principal's last P-5 filing date prior to the expiration of this bond. Obligations to pay part or all of the bond amount are deemed released upon the expiration date of the bond unless the Commission has made a claim on the bond or an enforcement action against any operations or activities subject to the bond is pending. Principal and Surety may also be relieved of their obligations to pay to the State part or all of the bond amount by written agreement between the Railroad Commission of Texas, Principal, and Surety.

If the bond amount is not paid in accordance with the terms of this bond and if judgment for any part of the bond amount is awarded through action of the Attorney General in bankruptcy, probate, or any other court proceeding, then the State shall be entitled to court costs and reasonable attorney's fees awarded by the court. Surety's liability for such costs and fees shall not be limited by the penal amount of this bond. It is agreed and understood that this bond is executed and performable in Austin, Travis County, Texas, and venue for any cause of action construing this bond is proper in Austin, Travis County, Texas.

A transfer, by any means, of any well covered under this bond does not relieve the Surety of any obligation under this bond until the operator acquiring the well has on file with the Commission an approved form of financial security covering the well. The transferred well remains covered by this bond and the Principal and Surety remain responsible for compliance with all laws and Commission rules covering the transferred well until the Commission determines that the well is covered by proper financial security and the acquiring operator has assumed full responsibility for the well in accordance with all state laws, including §91.107, Texas Natural Resources Code and Commission rules.

IN TESTIMONY WHEREOF, said PRINCIPAL has hereunto subscribed his or her name or has caused this instrument to be signed by its duly authorized officers and its corporate seal to be affixed this _____ day of _____ 20_____.

IN TESTIMONY WHEREOF, said SURETY has caused this instrument to be signed by its duly authorized officers and its corporate seal to be affixed this _____ day of _____ 20_____.

<br>

PRINCIPAL

(seal)

By_____

NAME & TITLE

<br>

SURETY (ATTACH POWER OF ATTORNEY)

(seal)

By_____

NAME & TITLE

<br>

SURETY'S FULL MAILING ADDRESS

<br>

SURETY'S PHYSICAL ADDRESS

TO: RAILROAD COMMISSION OF TEXAS
    Attention: Oil & Gas Division
    Permitting/Production,    P-5 Financial Assurance Section
    P.O. Box 12967
    Austin, TX 78711-2967

Bond #_____

**BLANKET PERFORMANCE BOND**

**P-5PB(2)**
rev. 6/2002

THE STATE OF TEXAS, COUNTY OF_____

    WHEREAS, persons performing oil and gas operations within the jurisdiction of the Railroad Commission of Texas are required to execute and file with the Commission a bond covering those operations, pursuant to §91.103 and §91.104 of the Texas Natural Resources Code;

    WHEREAS, the Principal named below is the operator of certain Commission-regulated operations including but not limited to (1) operations listed on the Commission's P-5 Organization Report records, and/or (2) wells listed on the Commission's Oil and Gas Proration Schedules, and any additional wells that may be obtained prior to the expiration of this bond and carried on the Oil and Gas Proration Schedules;

    WHEREAS, the Commission's P-5 Organization Report records and the Oil and Gas Proration Schedules pertaining to the Principal are incorporated herein by reference as if fully set forth at length;

    WHEREAS, the Principal desires to perform oil and gas operations and activities within the jurisdiction of the Commission, and which operations and activities must be carried on in full conformance with all state laws and Commission rules, including those laws and Commission rules, orders, and permits requiring operators to plug and abandon all wells and control, abate, and clean up pollution associated with an operator's oil and gas operations and activities;

    WHEREAS, Principal acknowledges and agrees that, due to amendments to the Texas Natural Resources Code, amendments to Commission Rules, and/or changes to the Principal's Commission-regulated operations, including without limitation the acquisition of additional wells, it may be required during the effective term of this bond to provide additional financial security beyond the face amount of this bond before its P-5 Organization Report will be accepted and approved.

| 1. Organization Name, exactly as shown on P-5 Organization Report. | | 2. P-5 Number, if assigned. | 3. Total # of operator's wells. |
|---|---|---|---|
| 4. Other Commission-regulated operations. See bond instruction sheet, Paragraph F. [ Check appropriate operations; example: operating a pipeline = 1 ]<br><br>(A) _____ (B) _____ (C) _____ (D) _____ (E) _____ (F) _____<br><br>(G) _____ (H) _____ (I) _____ (J) _____ (K) _____ (L) _____ | | 5. Other operations not included in (A)-(L). | 6. Effective Date of P-5 Renewal for which bond is being submitted. (Leave blank if this is the initial bond filing.) |

    We, _____ (person's name) as Principal, and
_____ as Surety, duly authorized and qualified to do business in the
State of Texas, are held and firmly bound unto the State of Texas in the sum of _____ Dollars
($_____) payable at Austin, Travis County, Texas, and for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

    This bond is conditioned that if the Principal will plug and abandon all wells and control, abate, and clean up pollution associated with its oil and gas operations and activities in accordance with state law and all permits, rules and orders of the Commission, and is in full compliance with the following requirements, then the Principal and Surety are relieved of their obligation to pay the bond amount to the State:

1. Inactive wells shall be maintained in compliance with Commission Statewide Rule 14 (a) by plugging the wells, (b) by restoring the wells to beneficial use, or (c) so as to prevent the pollution of any ground or surface water in the state or any uncontrolled escape of formation fluids from the strata in which they were originally located.

2. All active wells shall be maintained so as to prevent the pollution of any ground or surface water in the state or any uncontrolled escape of formation fluids from the strata in which they were originally located.

3. All oil and gas operations and activities shall be carried out so as to prevent pollution of any ground or surface water in the state.

    In the event of a failure of Principal to comply with the conditions and obligations of this bond, the Surety shall promptly remedy such non-compliance, in accordance with the laws of the state and permits, rules, and orders of the Commission, within 60 days of notice of non-compliance.

1. If any well or other oil and gas operation or activity subject to this bond is likely to pollute or is polluting any ground or surface water or allowing uncontrolled escape of formation fluids from the strata in which they were originally located, the Surety shall expend funds up to the face amount of the bond to control, abate and clean up pollution and to prevent further escape of formation fluids.

2. If any well or other oil and gas operation or activity subject to this bond is not polluting any ground or surface water or allowing uncontrolled escape of formation fluids from the strata in which they were originally located, but the Principal has failed to maintain current operator status as reflected on the Commission's P-5 Organization Report records, the Surety shall:

    (a) Expend funds up to the face amount of the bond to properly plug the well or close any other operation or activity (Surety understands and agrees that plugging or closing operations must be completed once commenced without the expenditure of State Funds, including State Oil-Field Cleanup funds); or

    (b) Pay liquidated damages. It is agreed by the parties that the actual damages which might be sustained by the Railroad Commission of Texas by reason of the failure to comply are uncertain and would be difficult of ascertainment, and it is further agreed that the sum of $2.50 per foot multiplied by the total depth of each non-compliant well, up to the face amount of the bond, would be reasonable and just compensation for such failure to comply, and Surety hereby promises to pay and the Railroad Commission of Texas agrees to accept, at its office in Austin, Travis County, Texas such sum as liquidated damages, and not as a penalty, in the event of such failure to comply.

(over)

3.  Except as provided by Paragraph 2(b) above, if the Commission has expended State Funds to plug any well, to close any other operation or activity, to control, abate and clean up pollution or take any other action to prevent further escape of formation fluids, the Surety shall reimburse the Commission for the amounts of State Funds so expended up to the face amount of the bond.

Sums demanded under this bond shall be paid to the Railroad Commission at Austin, Texas, within thirty days after receipt of written demand therefor, which demand shall be mailed by registered or certified U.S. mail to the address shown below.

Conditions and obligations under this bond are construed in accordance with state law and all permits, rules, and orders of the Commission, including any amendments thereto that may be made during the term of this bond, and Surety waives notice of any amendments. The State of Texas shall have the right to sue on and otherwise enforce the obligations of this bond without first resorting to or exhausting its remedies against the properties and assets of the Principal.

This bond is effective beginning 150 days after the Principal's P-5 effective date stated in Box 6. If the Principal is filing this bond for the first time, then the bond is effective on the Principal's P-5 effective date for the first year; thereafter, it will be effective 150 days after the P-5 effective date.

The term of this bond shall expire _____, 20_____ (date must be 150 days after one of the Principal's annual P-5 expiration dates) and is renewable. Written notice of renewal shall be given by the Surety to the Commission on or before the Principal's last P-5 filing date prior to the expiration of this bond. Obligations to pay part or all of the bond amount are deemed released upon the expiration date of the bond unless the Commission has made a claim on the bond or an enforcement action against any operations or activities subject to the bond is pending. Principal and Surety may also be relieved of their obligations to pay part or all of the bond amount by written agreement between the Railroad Commission of Texas, Principal, and Surety.

If the bond amount is not paid in accordance with the terms of this bond and if judgment for any part of the bond amount is awarded through action of the Attorney General in bankruptcy, probate, or any other court proceeding, then the State shall be entitled to court costs and reasonable attorney's fees awarded by the court. Surety's liability for such costs and fees shall not be limited by the amount of this bond. It is agreed and understood that this bond is executed and performable in Austin, Travis County, Texas, and venue for any cause of action construing this bond is proper in Austin, Travis County, Texas.

A transfer, by any means, of any well covered under this bond does not relieve the Surety of any obligation under this bond until the operator acquiring the well has on file with the Commission an approved form of financial security covering the well. The transferred well remains covered by this bond and the Principal and Surety remain responsible for compliance with all laws and Commission rules covering the transferred well until the Commission determines that the well is covered by proper financial security and the acquiring operator has assumed full responsibility for the well in accordance with all state laws, including §91.107, Texas Natural Resources Code and Commission rules.

IN TESTIMONY WHEREOF, said PRINCIPAL has hereunto subscribed his or her name or has caused this instrument to be signed by its duly authorized officers and its corporate seal to be affixed this _____ day of _____ 20_____.

IN TESTIMONY WHEREOF, said SURETY has caused this instrument to be signed by its duly authorized officers and its corporate seal to be affixed this _____day of _____ 20_____.

<br>

_____
PRINCIPAL

(seal)

By_____
NAME & TITLE

<br>

_____
SURETY (ATTACH POWER OF ATTORNEY)

(seal)

By_____
NAME & TITLE

<br>

_____
SURETY'S FULL MAILING ADDRESS

<br>

_____
SURETY'S PHYSICAL ADDRESS

P-5PB(2) rev. 6/2002

Surcharge on Commission Fees
Notice to Industry – February 2012
Page 2

| | Fee | Surcharge (150%) | Total Assessment |
|---|---|---|---|
| **Oil & Gas Well Drilling Permit Fees** | | | |
| Drilling permits less than 2,000 feet | $ 200.00 | $ 300.00 | $ 500.00 |
| Drilling permits 2,001 to 4,000 feet | 225.00 | 337.50 | 562.50 |
| Drilling permits 4,001 to 9,000 feet | 250.00 | 375.00 | 625.00 |
| Drilling permits greater than 9,000 feet | 300.00 | 450.00 | 750.00 |
| Expedite fee | 150.00 | 225.00 | 375.00 |
| Rule 37/38 exception fee | 200.00 | 300.00 | 500.00 |
| **P-5 Organization Report Fees** | | | |
| No activities | 300.00 | 450.00 | 750.00 |
| **Operation of Wells** | | | |
| 1 – 25 wells | 300.00 | 450.00 | 750.00 |
| 26 – 100 wells | 500.00 | 750.00 | 1,250.00 |
| more than 100 wells | 1,000.00 | 1,500.00 | 2,500.00 |
| Operation of natural gas pipeline(s) | 225.00 | 337.50 | 562.50 |
| Operation of liquids pipeline(s) | 625.00 | 937.50 | 1,562.50 |
| **Service/Facility Operations** | | | |
| Cleanup contractor, Directional Surveyor, Cementer and/or Transporter | 300.00 | 450.00 | 750.00 |
| Other Services/Facilities not listed above | 500.00 | 750.00 | 1,250.00 |
| **Voluntary Cleanup Application Fee** | $ 1,000.00 | $ 1,500.00 | $ 2,500.00 |
| **Inactive Well Filing Fees (Form W-3X)** | | | |
| Abeyance of plugging report | 100.00 | 150.00 | 250.00 |
| Well test report filing fee | 50.00 | 75.00 | 125.00 |
| **Rule Exception Fees** | 150.00 | 225.00 | 375.00 |
| **Certificate of Compliance (P-4) Reissue Fee** | 300.00 | 450.00 | 750.00 |
| **Waste Disposal Facility** | | | |
| Waste hauler's permit | 100.00 | 150.00 | 250.00 |
| **Large Quantity Generator of hazardous oil & gas waste** | | | |
| base fee | 1,000.00 | 1,500.00 | 2,500.00 |
| additional fee | 1,000.00 | 1,500.00 | 2,500.00 |
| **Small Quantity Generator of hazardous oil & gas waste** | | | |
| base fee | 200.00 | 300.00 | 500.00 |
| additional fee | 200.00 | 300.00 | 500.00 |
| **Surface Discharge fee** | 300.00 | 450.00 | 750.00 |
| **Fluid injection well permit** | 200.00 | 300.00 | 500.00 |
| **Hydrocarbon storage permits** | 200.00 | 300.00 | 500.00 |

**Table 1 – Listing of affected fees**

RAILROAD COMMISSION OF TEXAS
Oil and Gas Division

## NOTICE TO OPERATORS

# Surcharges on Railroad Commission Fees

The Railroad Commission has adopted changes to Statewide Rule 78 as it applies to certain fees charged by the commission's Oil & Gas Division. Under Rule 78 as amended, surcharges have been imposed on certain fees as required to implement the provisions of Senate Bill 1 (82nd Legislature, First Called Session, 2011). The amendments to Rule 78 are effective as of May 1, 2012.

Senate Bill 1 created the Oil and Gas Regulation and Cleanup Fund and mandated that the commission impose reasonable surcharges on commission fees. The funds collected through these surcharges will cover the commission's costs in certain functional areas specified in the bill, including oil and gas monitoring and inspections, oil and gas remediation, oil and gas well plugging, public information and services related to those activities, and administrative costs and state benefits for personnel involved in those activities.

During the rulemaking process, the Commission identified the fees on which surcharges would be imposed based on the statutory requirements. Comparing the revenue generated by those fees with the costs associated with the functional areas specified in the statute, the Commission determined that a surcharge of 150% of the respective fees would be needed.

In implementing this statute, the Commission is imposing surcharges on fees associated with the filing of:

> Drilling Permits
> Organization Reports
> Voluntary Cleanup Program Applications
> Inactive Wells (plugging extensions)
> Rule Exception requests
> Reconnection fees following cancellation of P-4 Certificates of Compliance
> Waste Disposal Facilities and Waste Hauler Permits (excluding disposal wells permitted
>     under Rule 9)
> Surface Discharge permits
> Injection well permits
> Hydrocarbon Storage permits

(See *Table 1 – Listing of Affected Fees* on the reverse side of this notice for more detailed information regarding the affected fees.)

Austin, Texas                                                                                    February 2012

## PLEASE FORWARD TO THE APPROPRIATE SECTION OF YOUR COMPANY

RAILROAD COMMISSION OF TEXAS
Oil and Gas Division

## NOTICE TO OPERATORS

# Inactive Well Requirements (HB2259 and HB3134)
# Enforcement against Organization Report Renewal Begins

In 2009, the 81st Texas Legislature enacted House Bill 2259 (HB2259) establishing new requirements for oil and gas operators related to inactive land wells and associated surface equipment. HB 2259 mandated certain cleanup activities based on how long a well has been inactive, additional steps related to approval of plugging extensions, and required that those actions be taken in order to complete renewal of an operator's Organization Report with the Railroad Commission.

In 2011, the 82nd Texas Legislature enacted House Bill 3134 (HB3134) to address certain process issues related to HB2259. HB3134 provided that an operator who has complied with all organization report renewal requirements except for those associated with HB2259 will be granted a 90-day extension to their active organization status in order to complete the work needed to comply with HB2259. HB3134 also provided that if the Commission determines that an operator has not achieved compliance by the end of that 90-day period, the operator may request a hearing on the matter, and that the operator will pay a fee to cover the hearing costs if the operator chooses to request such a hearing.

Information related to HB2259 and HB3134 has been included in Organization Report renewal packets and published on the Commission's website beginning in October, 2010, and updated as changes have occurred. **Enforcement of the inactive well requirements was delayed pending Commission adoption of rules to implement the HB3134 provisions. Those rules were adopted at a public meeting on June 12, 2012.**

**Beginning with Organization Reports expiring June 30, 2012, the Commission will enforce the requirements of HB2259/HB3134 against Organization Report (P-5) renewal.** (Renewal information for these operators was sent to them in April, 2012.) As Organization Report renewals due June 30, 2012, and later come due:

1) Once all organization report renewal requirements have been met except for those associated with the operator's inactive wells under HB2259, a notice will be sent to the operator advising them that they have an additional 90-days from the expiration of their previous organization report to bring all remaining inactive wells into compliance with these requirements. The operator's previous organization report will be extended to allow normal operations during this 90-day period.

2) If the commission determines compliance has not been met after 90 days, a second notice will be sent to the operator advising them of that determination and informing them that their organization report renewal will be denied. The operator may request a hearing on that determination; a request for a hearing must be received within 30 days of the date the second notice was mailed, and must include a $4,500 non-refundable hearing fee. The operator's previous organization report will be further extended to allow normal operations during this 30-day period. If a hearing is requested and the hearing fee paid, then the previous organization report will extend through the hearing process until a final Commission determination has been reached.

Additional information related to HB2259/HB3134 is published on the Commission's website at http://www.rrc.state.tx.us/compliance/hb2259/, and was included with your organization report renewal information.

Austin, Texas

June 2012

### PLEASE FORWARD TO THE APPROPRIATE SECTION OF YOUR COMPANY

## Inactive Well Compliance Summary

1. Review the wells on your inactive well listing (included with your P-5 renewal packet, or obtained through the online IWAR query), including the shut-in date.

2. Complete all required surface cleanup/removal:

   a. Disconnect the electricity to any inactive well. All wells appearing on your inactive well listing have been inactive at least 12 months.

   b. Purge all fluids from tanks, pipes and vessels for wells shut-in at least 5 years but less than 10 as of your next P-5 renewal date. (Wells shut-in 10 years or more must be brought into compliance by removal of the surface equipment; see "c" and "d" below.)

   Example: If your current P-5 expires on April 30, and you are filing your P-5 renewal for the year beginning 5/1/2011, then you would need to include all wells with a shut-in date between 06/2001 and 05/2006.

   c. Remove all surface equipment from wells shut-in more than ten years where the well completed its 10th year of inactivity after 9/1/10. (Note: wells that reached their 10th year of inactivity prior to 9/1/10 have shut-in dates of 01/1998 through 09/2000. Compliance with the surface equipment removal requirements on those wells is phased in over a five-year period; see "d" below.)

   Example: If your current P-5 expires on April 30, and you are filing your P-5 renewal for the year beginning 5/1/2011, then you would need to include all wells with a shut-in date between 10/2000 and 05/2001.)

   d. For wells that became 10-years inactive prior to 9/1/10, confirm that you have brought enough of those wells into compliance under the 5-year phase in period. At least 20% must be compliant as of your first P-5 renewal on or after 9/1/2011; at least 40% as of your first P-5 renewal on or after 9/1/2012; and so on. (**The phase-in period applies to surface equipment removal only; the requirement to disconnect electricity is not phased in.**)

   Complete and file with your P-5 Commission form W-3C certifying compliance with the equipment removal requirements for each well or group of wells or any applicable exemption. See the instructions on Form W-3C for further information.

3. Inactive Well Extensions:

   a. Correct any violations of Commission rules or requirements for which plugging extensions have been denied.

   b. Choose a blanket option or individual well option(s) for obtaining a plugging extension on all inactive wells.

   c. Complete any requirements associated with the selected plugging extension.

   Complete and file with your P-5, Commission Form W-3X and any required attachments for the selected plugging extension(s).

preceding state fiscal year for the Commission Oil and Gas Division district in which the inactive well is located."

The Commission will determine the average per-foot plugging cost for each Commission district based on state-funded plugging operations (excluding plugging of any bay or offshore wells) in that district.  The per-foot cost will be multiplied times the depth of the inactive wellbore on Commission records; the result will be the "cost calculation" amount for plugging that well.

Because the district costs vary from year to year, the amount required under certain options (blanket options 2 and 3, and individual options 4 and 5) also may vary from year to year.

## Transferring Wells to New Operators

Wells may be transferred from one operator to another operator.  Once the Commission has approved the Form P-4 transferring operatorship, the prior operator will no longer be responsible for compliance with these provisions.

The acquiring operator will have 6 months from the date of Form P-4 approval to bring any inactive wells into compliance with Statewide Rule 15.  The operator may comply by plugging the well, returning the well to active operation, or by applying for and being granted a plugging extension on the well.  **Important: until the acquiring operator has brought the well into compliance with Rule 15, the Commission may not approve any further transfers of the inactive well to a subsequent operator.**

**Following the expiration of the 6-month period after transfer, if any transferred well remains out of compliance with Rule 15, the Commission may, after notice and opportunity for hearing, revoke the operator's Organization Report.**

## Further information and links

Additional information regarding HB2259 is available on the Commission's website at:
http://www.rrc.state.tx.us/compliance/hb2259/index.php

All oil and gas forms are available through our website at:
http://www.rrc.state.tx.us/forms/forms/og/alpha.php

Please see the instructions included with Forms W-3C and W-3X.

Inactive well data for operators is available through the Inactive Well Aging Report ("IWAR") query on the Commission's website at:
http://www.rrc.state.tx.us/iwar/index.php

this year, the operator would count all wells plugged or returned to active operation since May 1 of last year. If the Commission cannot verify that the operator has plugged or returned to active operation the required number of wells, the operator may need to submit additional information identifying those wells.

2)  An operator that is a publicly traded entity may file with the Commission a copy of federal documents filed to comply with Financial Accounting Standards Board Statement No. 143, Accounting for Asset Retirement Obligations, and an original executed Uniform Commercial Code Form 1 Financing Statement, filed with the Secretary of State, that names the operator as "debtor" and the Railroad Commission of Texas as "secured creditor" and specifies the funds covered by the documents in the amount of the "cost calculation" (see below) for plugging all inactive wells held by the operator.

3)  The operator may file a bond (Form P-5PB(2)), Letter of Credit (Form P-5LC) or cash deposit in the amount of the "cost calculation" (see below) for plugging all inactive wells, or $2 million, whichever is less.

If you have fulfilled the requirements of one of these blanket options and wish to use it toward your plugging extensions, you would file a single Form W-3X form with your Form P-5 renewal. On the Form W-3X, you would indicate the option selected and attach any necessary supporting documentation (copies of the relevant documents, original bond/LOC forms, etc.)

Individual (well-level) options. Compliance with the additional requirement for plugging extensions can be met on a well-by-well level by filing one of five documents:

1)  an "abeyance of plugging report" as described in Rule 15(j), along with a $100 fee.

2)  a statement that the well is part of a Commission-approved Enhanced Oil Recovery (EOR) project.

3)  if the well is not otherwise required to be tested, a statement that an approved fluid level or hydraulic pressure test has been performed and submitted on Form H-15, along with a $50 fee. (This option is not available for a well that is more than 25 years old and is required to be tested under the H-15 program, or a well that has an active injection or disposal permit and is required by that permit to undergo periodic H-5 testing.)

4)  Additional financial security in the amount of the "cost calculation" (see below) for plugging this well; or

5)  an escrow fund deposit in an amount no less than 10% of the "cost calculation" (see below) for plugging the well.

Applications for plugging extensions filed under an individual well option may be filed at any time. If the Commission is unable to confirm eligibility (e.g., there is no Commission record of an approved EOR project for #2, no record of an H-15 record on file for #3, no filing fee has been received for #1 or #3, etc.), then your application for extension will be denied until the discrepancy can be resolved.

Cost Calculation. Under Rule 15(a)(2), the "cost calculation for plugging an inactive well" is defined as "the cost, calculated by the Commission or its delegate, for each foot of well depth plugged based on average actual plugging costs for wells plugged by the Commission for the

declines to approve your extension request administratively, you may request a hearing. (Your Organization Report renewal will not be delayed during the hearing process; however, if your request is ultimately denied, your Organization Report may be revoked.)

<u>Well Transfers and Surface Equipment Cleanup/Removal</u>. Transfer of a well that is part of your inventory of wells eligible for the Phase-In period will not count towards your compliance requirement. (Effectively, however, such a transfer will reduce the number of wells you are required to bring into compliance during the fifth and final year of the phase-in process.)

Additionally, the well will no longer be eligible for the phase-in treatment and the acquiring operator will be required to comply with the surface equipment removal requirement within 6 months of Commission approval of the transfer. Further, until the well has been brought into compliance, the Commission will not approve a transfer of the well to a third operator.

## Plugging Extension Requirements

<u>General requirements</u>. Prior to the passage of HB2259, the Commission required the following for approval of plugging extensions:

1) that the operator has a current Organization Report;

2) that the operator has, and on request provides evidence of, a good faith claim to a continuing right to operate the well;

3) that the well and associated facilities are otherwise in compliance with all Commission rules and orders; and

4) for wells more than 25 years old, that the operator perform a successful fluid level or hydraulic pressure test.

HB 2259 and the new rules additionally require compliance with the surface equipment cleanup/removal requirements outlined above. (However, because failure to comply with the surface equipment requirements will also result in your P-5 renewal not being approved, the effect of failure on plugging extensions is somewhat secondary: plugging extensions will be denied for multiple reasons.) Furthermore, HB2259 and the new rules require that the operator of an inactive well submit to the Commission additional information regarding one of several options in order to gain approval of a plugging extension. The operator must indicate the selected option on new **Form W-3X** (Application For An Extension Of Deadline For Plugging An Inactive Well), and provide any necessary documentation and fees associated with the selected option. The options include:

<u>Blanket (operator-level) options</u>. Compliance with the additional requirement for plugging extensions can be met at an operator-level by doing one of three things:

1) The operator may plug or restore to active operation 10% of the number of inactive wells operated at their last Form P-5 renewal date. (Note that the wells plugged or restored to activity need not have been among the operator's inactive wells at the last Form P-5 renewal date; wells that more recently became inactive, or inactive wells that were acquired since the last renewal, may also be counted.) If the operator's Form P-5 annual cycle begins on May 1 of each year, then for the operator's Form P-5 renewal

(Revised 9/1/2011)

1) For wells inactive for 12 months or longer, that the operator has physically terminated electric service to the well's production site (or that the site does not have electric service).

2) For wells inactive at least 5 years but less than 10 years:
   a. that the operator has emptied or purged of production fluids all piping, tanks, vessels and equipment associated with the well; or
   b. that the operator owns the land where the well is located.

3) For wells inactive 10 years or longer (See also "Phase-In Information" below):
   a. that the operator has removed all surface equipment;
   b. that the operator owns the land where the well is located; or
   c. that the well is associated with a Commission-approved Enhanced Oil Recovery (EOR) project and the equipment remaining on the lease is associated with that project.

The items to be certified are cumulative. For example, if the well has been inactive for 7 years, the operator must certify compliance with both #1 and #2 above.

An operator need only provide the certification as outlined above once. However, if a well is transferred to a subsequent operator, then certifications based on ownership of the land or upon EOR project approval will be nullified and the acquiring operator will be required to certify compliance in their own name. Also, if the well is returned to active operation and later becomes inactive again, the operator must recertify the well as the certifications become applicable for the new period of inactivity.

Phase-In Information. The rules provide for a five-year phase-in period for wells that have reached 10 years of inactivity prior to 9/1/2010 (i.e., those with shut-in dates of 09/2000 and earlier). The phase-in period ONLY applies to surface equipment removal; there is no phase-in for the requirement to disconnect electricity for 12-month inactive wells, or to remove surface equipment for wells becoming 10 years inactive on or after 9/1/2010. However, the wells eligible for phase-in need not have the fluids purged from lines and vessels provided that the removal action during the phase-in period also addresses any production fluids.

At least 20% of wells eligible for phase-in must be compliant with the surface equipment removal requirements at the first Form P-5 renewal date on or after 9/1/2011; at least 40% of the wells eligible for phase-in must be compliant at the Form P-5 renewal date on or after 9/1/2012; and so on until the Form P-5 renewal date on or after 9/1/2015, at which point all 10-year inactive wells must be compliant. Note that there is no penalty for early completion; any wells completed beyond the 20% required for the first year will count toward the 40% requirement in the second year.

Wells that are acquired from another operator following the 9/1/2010 effective date of HB2259 are NOT eligible for handling under the Phase-in process; those acquired wells must be addressed as outlined in the section on "Well transfers and Surface Equipment Cleanup/Removal" below.

Temporary Extensions. You may be eligible for a temporary (one year) extension to the surface equipment removal requirements if your inability to comply is solely due to safety concerns or required maintenance of the well site. If this is the case, you must include with Form W-3C a written affirmation of the facts regarding the safety concerns or maintenance. If the Commission

renewal date. (A listing of inactive wells also is included with each operator's P-5 renewal packet.)

**IMPORTANT: For purposes of P-5 renewal, you must bring into compliance all wells shown as of the date your P-5 renewal packet is generated.** P-5 packets are generated 3 months prior to your current P-5 expiration. For example, if your current P-5 expires at the end of April, then your P-5 packet will be generated and mailed to you in February; the listing included in that packet (and the IWAR data update in February) will include the wells for which compliance is required. A new query (separate from the IWAR query referenced above) has also been added to the Commission's website to allow operators to review the status of wells listed with their P-5 renewal and the operators progress towards HB2259 compliance.

**AN AUTOMATIC 90-DAY EXTENSION OF AN OPERATOR'S ACTIVE P-5 STATUS WILL BE GRANTED IF THE OPERATOR HAS MET ALL P-5 RENEWAL REQUIREMENTS EXCEPT FOR THOSE ASSOCIATED WITH HB2259.** This will provide additional time for the operator to complete the work needed to comply with the new requirements. Generally, you must file your Organization Report renewal form along with the P-5 financial security and P-5 filing fee; if the <u>only</u> reason why the Commission cannot approve the renewal is because you have wells that are not yet compliant with HB2259, then the 90-day extension will be automatically approved.

### Overview of HB2259 requirements:

For purposes of P-5 renewal, the new requirements fall generally into two categories: Surface equipment cleanup/removal and additional plugging extension requirements. An operator can achieve compliance by plugging the well, returning the well to active operation, or by complying with all necessary steps to obtain a plugging extension.

**HB2259 also prohibits the Commission from renewing or approving the Organization Report for an operator who fails to obtain plugging extensions for the operator's inactive wells and/or fails to comply with the surface equipment cleanup/removal requirements.** This prohibition also includes any previous issues for which plugging extensions have been denied (such as Form H-15 delinquency or denial, field violations and enforcement issues, lack of a good faith claim to the right to operate the well, etc.)

**If you do not comply with the new requirements, the Commission will be unable to renew your Organization Report or issue any permits to your organization. Your P-5 will become "Delinquent" and the Commission will begin to sever/seal your leases and wells and will ultimately initiate collection on your financial security.**

A summary of the requirements for Inactive Well compliance appears at the end of this document.

### Surface Equipment Cleanup/Removal:

<u>General requirements</u>. Depending on how long a well has been inactive, certain actions must be completed and certified to the Commission. An individual <u>with actual personal knowledge of the physical condition of the inactive well</u> must execute and submit to the Commission **Form W-3C** (Certification Of Surface Equipment Removal For An Inactive Well). The certification must state the following:

# IMPORTANT!  PLEASE READ!!

## NEW REQUIREMENTS REGARDING INACTIVE WELLS
### (COMPLIANCE WITH HB 2259 FOR P5 RENEWAL PURPOSES)

The 81st Texas Legislature (2009, Regular Session) enacted House Bill 2259 (HB 2259), effective September 1, 2010, establishing new requirements for oil and gas operators related to inactive wells and associated surface equipment.  HB 2259 amended the Texas Natural Resources Code to address two issues related to inactive land wells: (1) the dangers posed by live electrical lines connected to inactive wells; and (2) increased costs to plug inactive wells.  HB 2259 reflects the work of the Inactive Well Study Group, which included representatives of both industry and landowners.  HB 2259 applies only to land wells (not to bay and offshore wells.)

Effective September, 2010, the Railroad Commission (Commission) adopted amendments to existing Statewide Rules 1, 14, 21 and 78, and adopted a new Statewide Rule 15 to add the new statutory requirements and to add the surface equipment removal and inactive well requirements set out by HB 2259.  (The Commission repealed the previous Rule 15 and incorporated its requirements relating to surface casing to be left in place into Rule 14.)  **Under the new requirements, all operators will be required to annually address their complete inventory of inactive wells to obtain approval of their annual Organization Report (Form P-5) renewal.**

In 2011, the 82nd Texas Legislature (2011, Regular Session) enacted House Bill 3134 (HB 3134) to address certain process issues.  HB3134 provides that an operator who has complied with all P-5 renewal requirements except for those associated with HB2259 will be granted a 90-day extension to his P-5 active status in order to complete the work needed to comply with HB2259.  HB3134 also provides that if an operator has been unable to achieve compliance by the end of that 90-day period, they may request a hearing on the matter.  Pursuant to HB3134, the operator will be required to pay for hearing costs if they choose to request a hearing.  The 90-day extension process is already in place; however rulemaking will be necessary to implement the hearing process; that rulemaking is not yet completed (as of 9/1/2011).

---

The information in this document is only a summary of the new requirements and should be used as an aid in completing your P-5 (Organization Report) renewal.  All operators must review the relevant Statewide Rules.  The Statewide Rules and all forms referenced in this document also are available through the Commission's website. The Commission will include blank forms with each operator's P-5 renewal packet.

The Commission also has placed on its website inactive well information.  The Commission has created an Inactive Well Aging Report ("IWAR") query that will provide a list of all wells classified as "inactive" in the Commission's records.  The information on the IWAR includes a "Shut-in Date," which is the first inactive month according to Commission records.  The list provides length of inactivity based on the date you run the query, or based upon your next P-5

# IMPORTANT BANKRUPTCY NOTIFICATION

The operator to whom this P-5 renewal packet is sent may be a debtor in a bankruptcy proceedings. However, such operators are still required to comply with Texas state law and rules of the Railroad Commission regarding financial assurance. 28 U.S.C. 959(b). All operators, whether or not debtors in bankruptcy, are required to satisfy the requirements of Texas Natural Resources Code §91.103 regarding financial assurance. See Safety-Kleen, Inc. v. Wyche, 274 F.3d 846 (4th Cir. 2001); United States v. Power Eng'g Co., 191 F.3d 1224 (10th Cir.1999); United States v. Ekco Housewares, Inc., 853 F. Supp. 975 (N.D. Ohio 1994), rev'd, in part, on other grounds, 62 F.3d 806 (6th Cir. 1995): EPA v. Envtl. Waste Control, Inc., 917 F.2d 327 (7th cir. 1990).

The Railroad Commission understands that the operator to whom this P-5 renewal information is sent may be a debtor in a pending bankruptcy proceeding. The portion of this notice, if any, that represents pre-petition fees due is sent for information purposes, only, and is not an attempt to collect a debt. The Railroad Commission may file an appropriate proof of claim with the bankruptcy court for such pre-petition fees. Any post-petition fees due and owing as shown on this notice should be paid in accordance with this notice.

Please be aware that, pursuant to Section 91.142, Texas Natural Resources Code, an entity required to file a P-5 organization report or an affiliate of such an entity performing operations within the jurisdiction of the commission that files for federal bankruptcy protection shall give written notice to the Commission of that action by submitting the notice of the office of general counsel not later than the 30th day after the date of filing.

Reference: Statewide Rule 15 and 78

# Instructions:

File Form W-3X as required by Oil & Gas Statewide Rule 15 (16 Tex. Admin. Code §3.15) to apply for an extension to the deadline to plug an inactive well. All items on this form should be typed or clearly printed in blue or black ink.

### Blanket Application for Extensions:

If you are filing Form W-3X to request blanket plugging extensions for all wells that you operate:

1)  Complete items 1 through 3;

2)  Indicate the applicable blanket extension option;

3)  Attach any necessary supporting documentation (see below); and

4)  Sign and date the Form W-3X.

Under Statewide Rule 15(f)(2)(B), blanket plugging extensions require that you file with the Commission one of the following:

1)  for all inactive land wells that an operator has operated for more than 12 months, documentation that the operator has plugged or restored to active operation, as defined by Commission rule, 10% of the number of inactive land wells operated at the time of the last annual renewal of the operator's Organization Report (Form P-5);

2)  if the operator is a publicly traded entity, for all inactive land wells, the operator has filed with the Commission a copy of the operator's federal documents filed to comply with Financial Accounting Standards Board Statement No. 143, Accounting for Asset Retirement Obligations, and an original executed Uniform Commercial Code Form 1 Financing Statement, filed with the Secretary of State, that names the operator as the "debtor" and the Railroad Commission of Texas as the "secured creditor" and specifies the funds covered by the documents in the amount of the cost calculation for plugging all inactive wells; or

3)  the filing of a blanket bond on Commission Form P-5PB(2), Blanket Performance Bond, a letter of credit on Commission Form P-5LC, Irrevocable Documentary Blanket Letter of Credit, or a cash deposit, in the amount of either the lesser of the cost calculation for plugging all inactive wells or $2 million

### Individual Well Application for Extension:

If you are filing Form W-3X to request a plugging extension for a single well that you operate:

1)  Complete items 1 through 10;

2)  Indicate the applicable individual well extension option;

3)  Attach any necessary supporting documentation (see below); and

4)  Sign and date the Form W-3X

Under Statewide Rule 15(f)(2)(B), individual well plugging extensions require that you document one of the following:

1)  For each inactive land well identified in the application, the operator has paid the required filing fee, and the Commission or its delegate has approved an abeyance of plugging report which includes the following certification under the seal of the certifying professional engineer or professional geoscientist: "I hereby certify, that I am a currently licensed professional engineer or professional geoscientist and based on my personal knowledge of the inactive well identified in this report, the well has a future utility based on both 1) a reasonable expectation of economic value in excess of the cost of plugging the well during the period covered by this report; and 2) a reasonable expectation that the well will ultimately be restored to a beneficial use that will prevent waste of oil or gas resources that otherwise would not be produced if the well is plugged. I further certify that I have reviewed the documentation demonstrating the basis for the affirmation of the well's future utility attached to this application.;

2)  for each inactive land well identified in the application, the operator has filed a statement that the well is part of a Commission-approved EOR project;

3)  for each inactive land well identified in the application that is not otherwise required by Commission rule or order to conduct a fluid level or hydraulic pressure test of the well, the operator has conducted a successful fluid level test or hydraulic pressure test of the well and the operator has paid the required filing fee;

4)  for each inactive land well identified in the application, the Commission or its delegate has approved a supplemental bond, letter of credit, or cash deposit in an amount at least equal to the cost calculation for plugging an inactive land well for each well specified in the application; or

5)  for each time an operator files an application for a plugging extension and for each inactive land well identified in the application, the Commission or its delegate has approved an escrow fund deposit in an amount at least equal to 10% of the total cost calculation for plugging an inactive land well.

### Cost Calculation for Plugging an Inactive Well:

The cost calculation pursuant to Statewide Rule 15 is the cost, calculated by the Commission or its delegate, for each foot of well depth plugged based on average actual plugging costs for wells plugged by the Commission for the preceding state fiscal year for the Commission Oil and Gas Division district in which the inactive well is located.

**RAILROAD COMMISSION OF TEXAS**
Oil and Gas / Admin. Compliance
PO Box 12967
Austin TX 78711-2967

| READ INSTRUCTIONS ON BACK |

# APPLICATION FOR AN EXTENSION OF DEADLINE FOR PLUGGING AN INACTIVE WELL

# Form W-3X
(Rev. 09/2011)

| 1. OPERATOR NAME exactly as shown on Form P-5, Organization Report | 2. OPERATOR ADDRESS including city, state and zip code |
|---|---|
| 3. OPERATOR P-5 NO. | |

**- If you are applying for a blanket plugging extension for all inactive land wells operated by this entity:**

| Blanket Extension Options (See Instructions) |
|---|
| ☐ A   The filing operator has plugged or restored to active status 10% of the number of inactive land wells operated at the time of the last annual renewal of the operator's organization report; |
| ☐ B   The filing operator is a publicly traded entity and has filed with the Commission documentation naming the operator as "debtor" and the Railroad Commission of Texas as the "secured creditor" and specifies the funds covered by the documents in the amount of the cost calculation for plugging all inactive wells. |
| ☐ C   The filing operator has submitted additional financial security covering the amount of the cost calculation for plugging all inactive wells or $2 million, whichever is less. |

**OR**

**- If you are applying for a plugging extension for a single well:**

| 4. LEASE NAME as shown on Proration Schedule | | 5. FIELD NAME as shown on Proration Schedule | | |
|---|---|---|---|---|
| 6. API NUMBER   42- | 4. RRC DISTRICT NO. | 8. OIL LEASE / GAS ID NO. | 9. WELL NO. | 10. COUNTY |

| Individual Well Extension Options (See Instructions) |
|---|
| ☐ D   The well identified above is covered by an abeyance of plugging report and the operator has paid the required filing fee of $100.  (Please attach the abeyance of plugging report.) |
| ☐ E   The well identified above is part of a Commission-approved EOR Project. |
| ☐ F   The well identified above is not otherwise required by Commission rule or order to conduct a fluid level or hydraulic pressure test of the well, and the operator has conducted a successful fluid level or hydraulic pressure test of the well and has paid the required filing fee of $50.  (The test results must be filed with the Railroad Commission on Form H-15.) |
| ☐ G   The operator has filed additional financial security in the amount of the cost calculation for plugging the well identified above. |
| ☐ H   The operator has filed an escrow fund deposit in an amount at least equal to 10% of the cost calculation for plugging the well identified above. |

CERTIFICATION:  I certify under penalties prescribed by the Texas Natural Resources Code and the Texas Penal Code that, to the best of my knowledge, the information given in this application is true, complete, and correct.

_____
Signature

_____
Name (print or type)

_____
Title

_____
Date

_____
Phone No.

Contact Person and Phone Number if different from above: _____

# Instructions:

File Form W-3C as required by Oil & Gas Statewide Rule 15 (16 Tex. Admin. Code §3.15) to certify that an operator has fulfilled the requirements related to surface equipment removal for an inactive well. A person with personal knowledge of the physical condition of the inactive well must state the following:

A.   for wells that have been inactive for 12 months or longer, that the operator has physically terminated electric service to the well's production site;

B.   if the operator does not own the surface of the land where the well is located, and the well has been inactive for at least five years but for less than 10 years as of the date of renewal of the operator's organization report, that the operator has emptied or purged of production fluids all piping, tanks, vessels, and equipment associated with and exclusive to the well;

C.   if the operator does not own the surface of the land where the well is located, and the well has been inactive for at least 10 years as of the date of renewal of the operator's organization report, that the operator has removed all surface equipment and related piping, tanks, tank batteries, pump jacks, headers, fences, and firewalls; has closed all open pits; and has removed all junk and trash, as defined by Commission rule, associated with and exclusive to the well.

All items on this form should be typed or clearly printed in blue or black ink.

## Detailed Item Instructions:

**Items 4 through 10:**

If you are filing Form W-3C for a single well, then enter all information for Items 4 through 10. Item 11 should be left blank when filing for a single well.

If you wish to certify multiple wells on a single filing, then please prepare the listing of wells to be attached as shown below. Items 4 through 10 should be left blank; the number of wells and the number of pages for the attached listing should be entered in Item 11.

**Item 11: Attached Listing.**

If you prefer to attach a listing showing the wells to which the certification applies, then the listing must conform to the following requirements

A.   The listing should be clearly typed or printed in blue or black ink, and should be double-spaced.

B.   The listing should identify wells by API Number, RRC District, Oil Lease/Gas ID Number, Well Number, and County.

C.   Each page of the listing should indicate that it is "Page _____ of _____" where the first blank indicates the page number, and the second blank should show the total number of pages.

D.   The person making the certification should personally initial each page of the listing in the bottom right corner.

**Physical termination of electric service to the well's production site:** disconnection of the electric service to an inactive well site at a point on the electric service lines most distant from the production site toward the main supply line in a manner that will not interfere with electrical supply to adjacent operations, including cathodic protection units.

**Temporary exemption to requirement:** An operator may be eligible for a temporary exception to the surface equipment removal requirements if the operator is unable to comply with the requirements because of safety concerns or required maintenance of the well site. THE OPERATOR MUST INCLUDE A WRITTEN AFFIRMATION OF THE FACTS REGARDING THE SAFETY CONCERNS OR MAINTENANCE. Pursuant to Tex. Nat. Res. Code §81.0521, a $150 non-refundable fee is required for each exception to a Commission rule.

**Special Notice Regarding Surface Equipment Removal for wells identified as inactive for 10 years or longer as of September 1, 2010:**

With respect to the surface equipment removal requirement for 10-year inactive wells in an operator's inventory as of September 1, 2010, the requirement is phased in over the next five years. This will require an operator to remove the surface equipment for 20% of its 10-year inactive wells as of September 1, 2010, in each year until all of the 10-year inactive wells in an operator's inventory have been addressed. The population of all 10-year inactive wells in Texas as of September 1, 2010, has been identified by the Commission and will be posted on the Commission's website. Wells that become 10-year inactive wells after September 1, 2010, or that are acquired by a new operator after September 1, 2010 are not subject to the 5-year phase in period. In the case of acquired wells, an operator must bring those wells into compliance within 6 months after the Commission recognizes the new operator of the well. For wells becoming 10-years inactive after September 1, 2010, the operator must bring the wells into compliance prior to the time the operator's annual organization report is required to be filed.

RAILROAD COMMISSION OF TEXAS
Oil and Gas / Admin. Compliance
PO Box 12967
Austin TX 78711-2967

# CERTIFICATION OF
# SURFACE EQUIPMENT REMOVAL
# FOR AN INACTIVE WELL

# Form W-3C
(Rev. 09/2011)

READ INSTRUCTIONS ON BACK

| 1. OPERATOR NAME exactly as shown on P-5, Organization Report | 2. OPERATOR ADDRESS including city, state and zip code |
|---|---|
| **3. OPERATOR P-5 NO.** | |

## - If you are filing for a single well:

| 4. LEASE NAME as shown on Proration Schedule | | 5. FIELD NAME as shown on Proration Schedule | | |
|---|---|---|---|---|
| 6. API NUMBER  42- | 4. RRC DISTRICT NO. | 8. OIL LEASE / GAS ID NO. | 9. WELL NO. | 10. COUNTY |

## OR
## - If you are filing for an attached listing of wells:

11.
The _____ wells listed on the attached _____ pages.   (See Instructions for listing requirements.)
_Number of Wells_            _Number of Pages_

**NOTE: BY ATTACHING A LISTING OF WELLS, YOU CERTIFY THAT ALL WELLS ON THE ATTACHED LISTING HAVE BEEN PLACED IN COMPLIANCE WITH THE SURFACE EQUIPMENT REMOVAL REQUIREMENTS AS SPECIFIED BELOW.**

| I, the undersigned, certify that: (check all that apply) | | Required for: |
|---|---|---|
| ☐ A | electric service to the production sites for the well(s) identified above has been physically terminated, or the sites do not have electrical service.  (See instructions.) | a well or wells which have been inactive for 12 months or longer. |
| ☐ B1 | all piping, tanks, vessels, and equipment associated with and exclusive to the well identified above have been emptied or purged of production fluids; OR | a well or wells that have been inactive for at least five (5) years but less than ten (10) years. |
| ☐ B2 | the operator owns the surface of the land where the well(s) is located. | |
| ☐ C1 | all surface equipment and related piping, tanks, tank batteries, pump jacks, headers, fences, and firewalls associated with and exclusive to the well(s) identified above have been removed, all open pits associated with and exclusive to the well(s) identified above have been closed and all junk and trash, as defined by Commission rule, have been removed*; OR | a well or wells that have been inactive for at least ten (10) years. * for additional information regarding wells identified as inactive more than 10 years as of 9/1/10, please see instructions and/or SWR 15(i)(5) |
| ☐ C2 | the operator owns the surface of the land where the well is located; OR | |
| ☐ C3 | the well is part of a Commission recognized EOR project and the equipment remaining on the lease is solely associated with current and future operations of the project. | |
| ☐ D | I am unable to comply with the surface equipment cleanup/removal requirements due to safety concerns or required maintenance of the well site.  I have attached a written affirmation of the facts regarding the safety concerns or maintenance and request a temporary exception. *($150 fee per well required)* | See instructions and/or SWR 15(i)(3). |

CERTIFICATION:  I declare that the above certification(s) are based on my personal knowledge of the physical condition of the inactive well identified in this application, that this report was prepared by me or under my supervision or direction, and that I am authorized to make this report.  I further acknowledge that this certification is made pursuant to the provisions of Texas Natural Resources Code Section 91.143, which relates to false filings of Commission reports, and provides for the Commission to levy an administrative penalty of up to $1,000.00 for each false filing.

Signature _____

Name (print or type) _____

Title _____

Date _____

Phone No. _____

Contact Person and Phone Number if different from above: _____

G. **WHEN & WHERE TO FILE.** When required, file the original of the bond or letter of credit (or notice of renewal, where appropriate), or tender the Cash Deposit, in the Commission's Austin office. Financial security may be required at the time of filing an initial or renewal P-5, upon acquisition of wells by P-4 transfer, or upon filing of an application for drilling permit. If a bond or letter of credit is declared forfeited, payment shall also be made to the Austin office. Financial security may be filed or modified at other times during the P-5 year subject to certain restrictions.

H. **AMOUNT OF INDIVIDUAL PERFORMANCE BOND, LETTER OF CREDIT OR CASH DEPOSIT.** Persons who elect Option 1 (if available) shall file an individual performance bond, letter of credit or cash deposit, in an amount equal to $2.00 per foot multiplied by the total aggregate depth of all wells on the Oil and Gas Proration Schedules for the operator, or the total depth of any permitted wells if the operator has no wells on schedule. The total aggregate depth will be determined from Commission records and is provided on your Options Fact Sheet. Increases in the total aggregate depth due to an increase in the number of wells operated by a person may require that the amount of the bond, letter of credit or cash deposit, be increased. Bay and offshore well operators have additional financial security requirements as described in J below.

I. **AMOUNT OF BLANKET PERFORMANCE BOND, LETTER OF CREDIT OR CASH DEPOSIT.**

  1.  **Wells Only.**

| Number of Wells | Bond Amount |
|---|---|
| 1 to 10 | $ 25,000 |
| 11 to 99 | 50,000 |
| 100 or more | 250,000 |

  2.  **Commission-Regulated Operations Other Than Wells.** Except where excluded under **Paragraph A** above, persons performing other operations within the jurisdiction of the Commission, including, but not limited to those operations listed in **Paragraph F**, but who have no wells, shall file a bond in the amount of **$25,000.**

  3.  **Wells & Other Commission-Regulated Operations.** Persons operating wells and performing other operations within the jurisdiction of the Commission for which financial security is required shall file financial security in an amount determined by the greater of that required by the wells operated or by the non-well activities. **Note:** Additional bonding for commercial facilities may be separately required by the Commission pursuant to Statewide Rule 78.

  4.  **New Operations.** Persons filing a P-5 Organization Report for the first time in order to perform Commission-regulated activities are not required to file financial security at the time of filing. However, the Commission may require financial security in an appropriate amount prior to granting authority for certain operations by that operator (including approval of P-4 transfers or the issuance of drilling permits).

  5.  **Additional Wells.** Additional wells acquired by a person will automatically be covered by the blanket bond, letter of credit or cash deposit, provided that the total number of wells does not exceed the range permitted by the amount submitted. If the total number of wells increases beyond the range permitted, the Commission will require additional coverage before further acquisitions will be approved.

  6.  **Bay & Offshore Wells.** Bay and offshore well operators have additional financial security requirements as described in J below.

J. **BAY AND OFFSHORE WELL BONDING.** In addition to the bonding required under H and I above, an operator of bay and/or offshore wells must provide additional entry level bonding of $60,000 for bay wells or $100,000 for offshore wells. Operators of such wells are required to file additional financial security equal to the presumed plugging cost of $60,000 for each non-producing bay well or the presumed plugging cost of $100,000 for each non-producing offshore well beyond the first non-producing well.

K. **WELLS.** All wells of a person carried on the current Commission Oil and Gas Proration Schedules must be counted in determining the bond amount for a blanket bond. In Box #3 on the bond (letter of credit), list your total number of wells. This includes active, inactive, injection or disposal, 14(b)(2) extension, hydrocarbon storage wells or other wells carried on the Schedules. For an individual performance bond or letter of credit, also state, in Box #3, the total aggregate depth of all of your wells. Well count and depth is to be given as of the date you file the bond. If you have no wells on schedule, then any uncompleted wells for which you hold drilling permits (if any) will be used to calculate your financial security requirement. Refer to your Options Fact Sheet for well information.

L. **WELL TRANSFER.** A transfer, by any means, of any well covered under a bond is not complete unless the operator acquiring the well has on file with the Commission an individual performance bond, letter of credit or cash deposit under Option 1, or a blanket performance bond, letter of credit or cash deposit under Option 2, in an amount sufficient to cover both its current operations and the wells being transferred. Any existing bond, letter of credit or cash deposit remains in effect and the prior operator of the well remains responsible for compliance with all laws and Commission rules covering the transferred well until the Commission determines that the well is covered by proper financial security and the acquiring person has assumed full responsibility for the well in accordance with all state laws, including §91.107, TNRC and Commission rules.

M. **TERM & EXPIRATION.** A person must have a valid and current bond, letter of credit or cash deposit on file while performing Commission-regulated operations. The annual **expiration date of a bond must be 150 days after your P-5 expiration date; the expiration date of a letter of credit must be 90 days after your P-5 expiration date.** When filing a bond or letter of credit for the first time, you will be required to file a bond with an extended term, in order to provide continuous coverage between your P-5 effective date and the appropriate period beyond the P-5 expiration date as stated above. Written notice of renewal of an existing bond or letter of credit must be given by the Surety or financial institution to the Commission, or a new bond or letter of credit (or other authorized form of financial security) must be filed on or before your P-5 filing date. Obligations under bonds or letters of credit may be released by written agreement between the Commission, Principal (Operator) and the surety or financial institution.

RAILROAD COMMISSION OF TEXAS
P-5 Financial Assurance Unit
Oil & Gas Division
P.O. Box 12967
Austin, Texas 78711-2967

# INSTRUCTIONS

rev. 12/2005

## INDIVIDUAL & BLANKET PERFORMANCE BONDS
## LETTERS OF CREDIT OR CASH DEPOSITS

### For Wells and Other Oil and Gas Operations
### Pursuant to Sections 91.103, 91.104, 91.1041, 91.1042 & 91.109 Tex. Nat. Res. Code (TNRC)

A.  **FINANCIAL SECURITY.** **Except as noted below**, a person required to file a P-5 Organization Report (P-5), under § 91.142, TNRC and Commission rules, must also execute and file a bond, letter of credit or cash deposit. There are two options available under which a person would be considered a "Bonded Operator" under Commission rules: **Option 1** – an individual performance bond, letter of credit or cash deposit covering only wells; or **Option 2** – a blanket performance bond, letter of credit or cash deposit covering wells and/or other oil and gas operations. A person filing a P-5 who is engaged in non-well activities that require the filing of financial security cannot use Option 1. Bonds and Letters of Credit must be filed on forms approved by the Commission; these forms are available from the Commission or on our website at www.rrc.state.tx.us. Bonds must be issued by a surety company registered in the State of Texas with the Texas Department of Insurance.

    **EXEMPTION FROM FINANCIAL SECURITY REQUIREMENT:** if an operator's only activity is as a first purchaser, survey company, salt water hauler, gas nominator, gas purchaser or well plugger is not required to file financial security in connection with their P-5 filing.

    **WELL SPECIFIC PLUGGING INSURANCE:** a wellbore for which the operator has filed a well-specific plugging insurance policy will be excluded from the calculation of an operator's financial security requirement. An insurance policy filed for this purpose must meet the requirements of Statewide Rule 78.

B.  **INDIVIDUAL PERFOMANCE BOND (Option 1).** An individual performance bond may be submitted by any person who operates one or more wells and who has no other Commission-regulated activities that require financial security at the time of filing. An individual bond will cover all permitted wells and all current wells carried on the Commission's Oil and Gas Proration Schedules, including but not limited to active, inactive, injection or disposal, 14(b)(2) extension, or hydrocarbon storage. Additional wells that are obtained during the current year and prior to the filing of next year's P-5 may require that the bond amount be increased to cover the additional wells. Only one individual bond covering all wells is required.

C.  **BLANKET PERFORMANCE BOND (Option 2).** A blanket performance bond may be submitted to cover all Commission-regulated operations performed by a person, including all current wells. Additional wells that are obtained prior to the filing of next year's P-5 and carried on the Oil and Gas Proration Schedules will be automatically covered by the bond provided that the total number of wells remains within the range specified for the bond amount (see I(1) below). Only one blanket performance bond is required for a person performing multiple operations.

D.  **LETTER OF CREDIT.** A letter of credit may be submitted to fulfill financial security requirements, subject generally to the same requirements for bonds. If you are submitting a letter of credit in lieu of an individual performance bond under Option 1, you need not fill in Box #4 on the letter of credit.

E.  **CASH DEPOSIT.** A cash deposit may be submitted in lieu of either bond. Cash deposits must be submitted by certified cashiers check and will be held in an account within the Oil Field Clean Up Fund. Any interest accruing on cash deposits will be deposited into the Oil Field Clean Up Fund pursuant to Texas statute and will not accrue to the operator's account.

F.  **OIL & GAS OPERATIONS.** Statewide Rule 1 lists some of the oil and gas operations regulated by the Commission. These and others are also listed below. These operations and associated activities must be covered by a bond or alternate form of financial security. If you are submitting a blanket bond, in Box #4 on the bond (letter of credit), identify all Commission-regulated operations that you perform, by checking each appropriate operation and providing a sufficient description of any other Commission-regulated operations not listed below.

**Commission-Regulated Operations**
(A) permitting, drilling, operating, or producing any oil, gas, geothermal resource, brine mining injection, fluid injection, or oil & gas waste disposal well;
(B) transporting, reclaiming, treating, processing, or refining crude oil, gas & products, or geothermal resources & associated minerals;
(C) discharging, storing, handling, transporting, reclaiming, or disposing of oil & gas waste, including hauling salt water for hire by any method other than pipeline[*];
(D) operating gasoline plants, natural gas or natural gas liquids processing plants, pressure maintenance or repressurizing plants, or recycling plants;

| | |
|---|---|
| (E) recovering skim oil from a salt water disposal site; | (I) operating a pipeline; |
| (F) nominating crude oil or natural gas[*]; | (J) operating as a cementer approved for plugging wells[*]; |
| (G) operating a direction survey company[*]; | (K) operating an underground hydrocarbon or natural gas storage facility; or |
| (H) cleaning a reserve pit | (L) gas purchaser[*]. |

[*] If an operator's only activity is as a first purchaser, survey company, salt water hauler, gas nominator, gas purchaser or well plugger is not required to file financial security in connection with their P-5 filing.

(over)

Each draft hereunder must be endorsed on the reverse side of this Blanket Letter of Credit, and this Blanket Letter of Credit must be attached to the last draft when the credit has been exhausted.  Drafts may be presented at the office of this bank no later than 2:00 p.m. (local time) on _____ , 20 ____ (date must be 90 days after the operator's P-5 expiration date), and bear the clause "Drawn under the _____ (Bank name), Bank Letter of Credit No. _____ , dated _____."

We hereby engage with the bona fide holders of this draft and/or documents presented under and in compliance with the terms of this Blanket Letter of Credit that such draft and/or documents will be duly honored upon presentation to us.

Our obligations hereunder shall not be subject to any claim or defense by reason of the invalidity, illegality, or unenforceability of any of the agreements upon which this Blanket Letter of Credit is based.  This Documentary Blanket Letter of Credit is subject to the "Uniform Customs and Practice for Documentary Credits" (2007 Revision) fixed by the International Chamber of Commerce (Publication #600), when not in conflict with the express terms hereof or with the provisions of Article Five of the Texas Business and Commerce Code.

Bank Name: _____

By: _____

(Name): _____

(seal)　　　　　　　　　　　　　　　(Title): _____ ( )_____

ATTEST:　　　　　　　　　　　　　　　　　　　　　　　　　　Tel:　Area Code　　　　Number

Address of Bank:

_____　　　　_____
Assistant Cashier or Cashier

_____　　　　_____
Date: month    day    year

TO:   RAILROAD COMMISSION OF TEXAS
       Attention: Oil & Gas Division
       Permitting/Production, P-5 Financial Assurance Section
       P.O. Box 12967
       Austin, TX 78711-2967

**P-5LC**
rev. 1/2008

**IRREVOCABLE DOCUMENTARY
BLANKET LETTER OF CREDIT**

We hereby establish our Irrevocable Documentary Blanket Letter of Credit in favor of the Railroad Commission of Texas, Austin, Texas for the account of _____ (operator's name), for the aggregate amount of _____ Dollars ($_____) available by your drafts at sight on the bank when drawn in accordance with the terms and accompanied by the documents listed below:

A. This Blanket Letter of Credit is issued in connection with the filing of a P-5 Organization Report (P-5) with the Commission as required by §91.142, Texas Natural Resources Code (TNRC) in order to perform operations within the jurisdiction of the Railroad Commission of Texas, including but not limited to (1) operations listed in the Commission's P-5 Organization Report records (P-5 records) for the operator, and/or (2) wells listed on the Commission's Oil and Gas Proration Schedules (Schedules), and any additional wells that may be obtained prior to the expiration of this Blanket Letter of Credit and carried on the Oil and Gas Proration Schedules. Said P-5 records and Schedules are incorporated herein by reference as if fully set forth at length.

| 1. Organization Name, exactly as shown on Form P-5 Organization Report. | 2. P-5 Number, if assigned. | 3. Total # of operator's wells: | Total aggregate depth of all wells: |
|---|---|---|---|
| 4. Other Commission-regulated operations. See bond instruction sheet, Paragraph F. [Check appropriate operations; example: operating a pipeline= I ]  (A) ____ (B) ____ (C) ____ (D) ____ (E) ____ (F) ____  (G) ____ (H) ____ (I) ____ (J) ____ (K) ____ (L) ____ | Other operations not included in (A)-(L). | | |

B. The operator and the issuer of this Blanket Letter of Credit acknowledge and agree that, due to amendments to the Texas Natural Resources Code, amendments to Commission Rules, and/or changes to the operator's Commission-regulated operations, including without limitation the acquisition of additional wells, operator may be required during the effective term of this Blanket Letter of Credit to provide additional financial security beyond the face amount of this Blanket Letter of Credit before its P-5 Organization Report will be accepted and approved.

C. This Blanket Letter of Credit is specifically issued at the request of the operator as guaranty that this fund will be available during the time that the operator is performing Commission-regulated operations. We are not a party to, nor bound by, the terms of any agreement between you and the operator out of which this Blanket Letter of Credit may arise.

D. Drafts drawn under this Blanket Letter of Credit must be accompanied by an affidavit from the Railroad Commission of Texas or an authorized representative, stating that:

1. a well or other oil and gas operation or activity subject to this Letter of Credit is likely to pollute or is polluting any ground or surface water or is allowing uncontrolled escape of formation fluids from the strata in which they were originally located; or

2. a well or other oil and gas operation or activity subject to this Letter of Credit is not being maintained in compliance with Commission rules or state law relating to plugging or the prevention or control of pollution; or

3. a well or other oil and gas operation or activity subject to this Letter of Credit is not polluting any ground or surface water or allowing uncontrolled escape of formation fluids from the strata in which they were originally located, but the operator has failed to maintain current operator status as reflected on the Commission's P-5 records;

AND

4. the draft is in the estimated cost of plugging each well (an amount otherwise impossible to determine as to the exact amount but which is estimated by multiplying the total depth by $2.50 per foot), closing any other operation or activity or controlling, abating, or cleaning up pollution.

We will be entitled to rely upon the statements contained in the affidavit and will have no obligation to independently verify any statements contained therein.

(over)